EDWARD B. McMENOMY AND ANOTHER v. ARNOLD J. RYDEN, JR., AND OTHERS.

148 N. W. (2d) 804.

February 17, 1967—No. 39,924.

56

*Dorsey, Owen, Marquart, Windhorst & West, Henry Halladay,* and *Curtis D. Forslund,* for appellants.

*McMenomy, Hertogs & Fluegel, Fred Burstein,* and *Wolf, Popper, Ross, Wolf & Jones,* for respondents.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order denying a motion for summary judgment wherein the questions involved were certified by the trial court as being important and doubtful.

Midwest Technical Development Corporation (hereinafter referred to as Midwest) was incorporated under Minnesota law in 1958 as a closed-end, nondiversified investment company. The purpose of its existence is to invest funds of its stockholders in securities of other enterprises, and it is organized in such a manner that its main purpose is to seek out investment opportunities in new companies operating in the technological field. It aims at investing in growth capital so that its stockholders will benefit eventually through long-term capital gains.

As an investment company of this type it is subject to the jurisdiction of the Securities and Exchange Commission, hereinafter referred to as S. E. C., under the Investment Company Act of 1940. 54 Stat. 789, 15 USCA, § 80a-1, et seq.

In 1962 S. E. C. brought an action against certain corporations and the appellants, who were formerly directors of Midwest, charging that defendants were "guilty of gross abuse of trust and gross misconduct because they had placed themselves in positions of conflicting interests whereby they made decisions 'with other than disinterested motives.' "

Shortly after the action was commenced by S. E. C., this action was commenced in the District Court of Hennepin County by Edward B. and Ellen B. McMenomy, minority shareholders in Midwest, as a derivative action for the benefit of the shareholders of the company. An examination of the complaints in the two actions shows quite conclusively that the McMenomy complaint was almost an exact copy of the S. E. C. complaint.

The S. E. C. case went to trial in Federal court before the Honorable Gunnar Nordbye, who rendered his decision on July 5, 1963, absolving the directors of Midwest of the charges made by S. E. C.[1] He did grant some injunctive relief which is not of importance here. Judge Nordbye, among other things, found that—

"* * * an adjudication of gross abuse of trust must be based upon evidence that a director is so untrustworthy that he should not be permitted to act in that capacity for any other company. The Court would

---

[1] For full text of memorandum decision, see CCH, Federal Securities Law Reporter, 1961-1964 Decisions, par. 91,252.

not be justified in painting these directors with a broad brush of malfeasance and stigmatize them with a finding of gross misconduct and gross abuse of trust. In the launching of new electronic companies in 1960 and 1961, some of these directors, if not all, may have failed to recognize their inherent responsibilities as directors of an investment company, and therefore unwittingly placed themselves in situations which should have had the approval of the Commission."

After the S. E. C. action was terminated, several of the defendants moved for summary judgment in their favor in the derivative action brought by plaintiffs on the grounds that the decision in the S. E. C. action barred any further proceedings in the derivative action by virtue of the fact that such determination was res judicata or that the derivative action was barred by the doctrines of estoppel by judgment and estoppel by verdict. The court denied this motion but certified the questions as important and doubtful, which led to this appeal.

■ It is elementary that before res judicata can apply the two complaints must involve the same cause of action and the parties must be the same or in privity with each other. Unless both conditions exist the derivative action cannot be barred by the determination of the S. E. C. action.

■ The common test for determining whether a former judgment is a bar to a subsequent action is to inquire whether the same evidence will sustain both actions. West v. Hennessey, 58 Minn. 133, 59 N. W. 984; Melady-Briggs Cattle Corp. v. Drovers State Bank, 213 Minn. 304, 6 N. W. (2d) 454.

■ On the privity issue, it is obvious that the parties are not the same. Are they, then, in privity? It is next to impossible to formulate a definition of "privity" in this context that will apply to all cases. In 30A Am. Jur., Judgments, § 399, we find the following:

"There is no generally prevailing definition of privity which can be automatically applied to all cases involving the doctrine of res judicata. Who are privies requires careful examination into the circumstances of each case as it arises. In general, it may be said that such privity involves a

person so identified in interest with another that he represents the same legal right."

50 C. J. S., Judgments, § 788, states:

"With respect to the application of the doctrine of res judicata to those in privity with parties to a suit, there is no generally prevailing definition of 'privity' which can be automatically applied to all cases, and the determination of who are privies requires careful examination into the circumstances of each case as it arises."

Applying the general definition to the facts of this case, it would seem quite clear to us that the shareholders in the derivative action brought in the state court were not in privity with S. E. C. in the action brought in Federal court. The purposes of the two actions were not the same and it cannot be said that in this action S. E. C. represented the shareholders. That being true, this question must be answered in the negative and might well end this appeal.

The trial court based its decision on the lack of privity alone. A determination of who are in privity is such a nebulous thing that we have felt compelled to consider other aspects of the case as well. Whether S. E. C. as such could or would litigate the question of whether directors, officers, and others should be compelled to disgorge illegal profits or gains is something we do not know. The power to do so cannot be found expressly stated in the Investment Company Act of 1940. If it is to be found at all, it must be in the implied powers incident to the enforcement of those regulatory measures expressly provided in the act. There is some difficulty among the Federal courts as to whether a stockholder may maintain a derivative action under the Investment Company Act, and it goes even one step further when we seek to determine whether S. E. C. may maintain such action for the benefit of stockholders. A review of the few cases there are on this subject may throw some light on it.

An examination of the Investment Company Act of 1940 can hardly lead to any other conclusion than that it was intended as a comprehensive regulatory act. Its purpose undoubtedly was to curb those practices

which are inherent in such companies and may result in detriment to investors if not controlled.

In Aldred Investment Trust v. Securities and Exchange Comm. (1 Cir.) 151 F. (2d) 254, 260, the court said:

"* * * By reason of its essential character of liquidity the investment company is peculiarly subject to abuse (See Report of the Securities and Exchange Commission on Investment Trusts and Investment Companies (1939); 50 Y. L. J. 440; 41 Col. L. R. 269). The Investment Company Act of 1940 meets the problems recognized therein by subjecting investment companies to regulation by the S.E.C. § 1(b) of the Act, 15 U.S.C.A. § 80a-1(b), in effect codifies the fiduciary obligations placed upon officers and directors of investment companies. It declares the national public interest and the interest of investors to be adversely affected—"

after which follow the statements to be found in the act of the manner in which the public may be adversely affected.

An examination of the act itself quite clearly discloses the policy of Congress motivating its enactment. Section 80a-1(a) reads:

"Upon the basis of facts disclosed by the record and reports of the Securities and Exchange Commission made pursuant to section 79z-4 of this title, and facts otherwise disclosed and ascertained, it is found that investment companies are affected with a national public interest in that, among other things—"

after which follow five paragraphs showing the manner in which the public interest is affected.

Section 80a-1(b) reads:

"Upon the basis of facts disclosed by the record and reports of the Securities and Exchange Commission made pursuant to section 79z-4 of this title, and facts otherwise disclosed and ascertained, it is declared that the national public interest and the interest of investors are adversely affected—"

after which follow eight paragraphs setting forth the manner in which the public interest and the interest of investors may be adversely affected. Finally, the declaration of policy concludes:

"It is declared that the policy and purposes of this subchapter, in accordance with which the provisions of this subchapter shall be interpreted, are to mitigate and, so far as is feasible, to eliminate the conditions enumerated in this section which adversely affect the national public interest and the interest of investors."

Section 80a-35 [2] provides that the S. E. C. is authorized to bring an action in the proper Federal court against officers, directors, members of an advisory board, investment adviser, or depositor, or principal underwriter, if such registered company is an open-end company, unit investment trust, or face-amount certificate company, alleging *gross misconduct or gross abuse of trust*; and if the allegations of gross misconduct or gross abuse of trust are established the court shall enjoin such person from acting in such capacity or capacities, either permanently or for such period of time as it in its discretion shall deem appropriate.

It is obvious that under this section there is no express provision for bringing an action against the specified persons to recover back for shareholders illegal profits or gains. The right to maintain such action, if it exists, must be found in the implied authority of Federal courts to entertain such action and apparently arises by virtue of § 80a-43 of the code (§ 44 of the original act) which, so far as here material, reads:

"The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have jurisdiction of violations of this subchapter or the rules, regulations, or orders thereunder, *and, concurrently with State and Territorial courts, of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this subchapter or the rules, regulations, or orders thereunder.*" (Italics supplied.)

Apparently the argument is that inasmuch as Congress has provided

---

[2] Apparently the first 28 section numbers in the original enactment, 54 Stat. 789, and in the codification are the same, and thereafter the code section number is one digit less than the original enactment. Thus, § 80a–35 in the code is § 36 in the act as enacted.

a forum for bringing an action in equity, implied authority exists to render full relief on the behalf of those injured by a violation of the act.

It would seem that in the S. E. C. case tried before Judge Nordbye the court granted injunctive relief for noncompliance with certain provisions of the act, even though he found a lack of gross misconduct or gross abuse of trust. However, that fact is not of importance here. It may be of some importance to determine whether individual shareholders may maintain a derivative action in Federal court under the Investment Company Act to recover for the benefit of shareholders illegal or ill-gotten gains of those who would normally be answerable in a derivative action in a state court for a violation of a fiduciary relationship. This question is exhaustively examined in Brown v. Bullock (S. D. N. Y.) 194 F. Supp. 207, affirmed (2 Cir.) 294 F. (2d) 415, and Brouk v. Managed Funds, Inc. (8 Cir.) 286 F. (2d) 901.

The two circuits are in disagreement. In Brown, wherein S. E. C. appeared as amicus,[3] the court held that the Federal court had jurisdiction to entertain a derivative shareholders' suit based at least in part on alleged violations of the act. In Brouk the United States District Court refused to grant a motion to dismiss for lack of jurisdiction, but was reversed by the Court of Appeals, which held, contrary to Brown, that such action could not be maintained by a shareholder under the Investment Company Act.[4]

Whatever the correct rule is respecting the right of a shareholder to maintain a derivative action for the benefit of the stockholders of an investment company under the Investment Company Act (and this may involve the right of plaintiffs in the present action to intervene in any

---

[3] For an interesting discussion of the propriety of S. E. C.'s appearances as amicus curiae as an aid to plaintiffs in mutual fund litigation, see 52 A. B. A. J. 337 and a reply justifying such appearance by S. E. C. in Id. p. 749. Both articles discuss the Brouk and Brown cases and cast some light on the role of the S. E. C. as amicus in such litigation.

[4] See, also, Schwartz v. Eaton (2 Cir.) 264 F. (2d) 195, where the court apparently was in accord with the Brown case but dismissed the appeal on other grounds; Townsend Corp. of America v. Davidson (D. N. J.) 222 F. Supp. 1; Taussig v. Wellington Fund, Inc. (3 Cir.) 313 F. (2d) 472; Ruskay v. Reed (S. D. N. Y.) 225 F. Supp. 581.

S. E. C. action), it seems quite clear that a common-law action or one against directors or officers under our statute for a breach of fiduciary duties goes further than the right to secure injunctive relief granted in this case, or even a right to sue in Federal court under the Investment Company Act, if there is such right. Liability, if there is any, is not predicated on the same tests. Under the Minnesota common law and statutes, liability is predicated upon a breach of a fiduciary relationship, which involves mainly a lack of good faith. Our statute involving the obligation of directors, Minn. St. 301.31, reads:

"Officers and directors shall discharge the duties of their respective positions in good faith, and with that diligence and care which ordinarily prudent men would exercise under similar circumstances in like positions."

We do not have the record of the trial of the S. E. C. action involved here, but from an examination of Judge Nordbye's findings and memorandum decision it seems quite clear that, the court having found there was no gross misconduct or gross abuse of trust as required by § 80a-35, any rights S. E. C. may have under its implied authority to compel directors, officers, and others to disgorge for the benefit of stockholders were not litigated. Furthermore, as far as the S. E. C. action is concerned, it would seem that Judge Nordbye's decision is based on lack of evidence of gross misconduct or gross abuse of trust and not on the tests generally applied in a state action. While it may be true that implied authority exists under the Federal act for maintaining a derivative suit by shareholders to accomplish the same purpose as intended by the state statute, the crux of Judge Nordbye's decision is that he found there was no gross abuse as required under § 80a-35 of the Investment Company Act. Under these circumstances it cannot be held that the evidence in both actions would be the same.

While the existence or nonexistence of the right to maintain a derivative action under the Investment Company Act in Federal court does not solve the problem here, it is discussed because it is conceivable that if such an action were brought and successfully concluded so as to litigate all the rights the stockholder would have in a derivative action in a state court, it would seem to follow that it ought to end the matter there, at

least if the stockholders recovered all they would be entitled to recover in the state court action. On the other hand, if an action is brought in a state court to recover illegal or unlawful gains of officers, directors, or brokers, or others who might be liable to the company, we have serious doubts that it would bar an action by S. E. C. to restrain violations of the act or compel compliance with it. That, essentially, is the reverse of the situation we have here. The S. E. C. action, tried first, determined there was no gross misconduct or gross abuse of trust. Hence it did not reach the same objectives sought in the state action, where liability, if there is any, is determined by entirely different tests. In other words, if we adopt Brown v. Bullock, *supra*, as controlling law, a shareholder could have brought an action under the act seeking the relief here sought in the state court action; or possibly could have been permitted to intervene in an action brought by S. E. C., in which event the trial of that action should conclude the matter once and for all. The trouble is that that is not what was done here.

An interesting illustration of what might happen is found in the Brouk case. Certiorari was granted to review the decision of the Court of Appeals. The case was later dismissed as moot, without any opinion. An examination of the briefs and the joint petition of appellant and respondents to have the case declared moot is of interest:

Originally three actions were commenced. Managed Funds, Inc., instituted an action in the United States District Court for the Eastern District of Missouri, entitled Managed Funds, Inc. v. Slayton Associates, against certain of its former directors, advisers, underwriters, and brokers. This case became known as Brouk v. Managed Funds, Inc.

A derivative stockholder's suit was instituted about the same time and apparently on substantially the same complaint in the Court of Chancery of the State of Delaware, under the name of Lutz v. Boas, alleging the same causes of action against certain of the same defendants named in the Brouk case. Subsequently Managed Funds, Inc., was realigned in this cause and took over the conduct of the case. The third action was a derivative stockholder's suit, entitled Josephson v. Slayton, which was filed in the United States District Court for the District of Delaware, alleging the same cause of action against certain defendants named in the

above two cases. Josephson v. Slayton was later transferred to the United States District Court for the Eastern District of Missouri and consolidated with Managed Funds, Inc. v. Slayton Associates. A motion to dismiss on the grounds that the court lacked jurisdiction to entertain a derivative stockholder's suit under the Investment Company Act of 1940 was denied by the trial court but reversed on appeal by the Court of Appeals of the Eighth Circuit. Certiorari was granted by the United States Supreme Court, Managed Funds, Inc. v. Brouk, 366 U. S. 958, 81 S. Ct. 1921, 6 L. ed. (2d) 1252, and had the case gone to completion this question might have been settled once and for all. However, it became moot for the reason that while the Federal court cases were pending, the case in the Delaware Chancery Court was tried and many of the defendants were found liable to the corporation. Lutz v. Boas, 39 Del. Ch. 585, 171 A. (2d) 381. Thereafter a complete settlement was made between them and stipulations were filed releasing all defendants in all three actions. Thereupon a joint motion of Managed Funds, Inc., and the respondents in the Brouk action was submitted to the United States Supreme Court setting forth that the issues involved in the cases pending in the Federal court had become moot by virtue of the settlement and requesting that the judgment of the Eighth Circuit Court of Appeals be vacated and the case remanded to the United States District Court in Missouri for such other action as was deemed proper. This motion was granted and the appeal dismissed, leaving the jurisdictional question undetermined by the United States Supreme Court. Managed Funds, Inc. v. Brouk, 369 U. S. 424, 82 S. Ct. 878, 8 L. ed. (2d) 6.

The disposition of this case seems to illustrate that if recovery is had in a derivative action, no matter where it is tried, it controls the disposition of other cases involving trial of the same issues. Thus, had the state court action in Minnesota been tried and recovery had, it would undoubtedly control a derivative action brought in Federal court to recover for the same losses. However, it undoubtedly would not prevent S. E. C. from proceeding to enjoin or restrain those covered by the Investment Company Act from continuing prohibited practices, so to that extent the trial in the state court would not bar S. E. C. from performing its duties under the act; nor do we think that an action by S. E. C.,

limited as it was here to the granting of injunctive relief, should bar the action in the state court intended to recover for the benefit of shareholders the alleged illegal profits made by officers and directors of the company.

■ Appellants further contend that plaintiffs in this action should be barred because they could have intervened in the S. E. C. action and litigated the issues which are raised in the state action. Even if we assume that these plaintiffs could have intervened as a matter of right, which we seriously doubt, or that the court had discretionary power to permit them to intervene and would have done so, we think the rule is fairly clear that, having failed to seek intervention, they are not barred on that account. The case of Gratiot County State Bank v. Johnson, 249 U. S. 246, 39 S. Ct. 263, 63 L. ed. 587, involved a bankruptcy proceeding. Under the Bankruptcy Act a creditor was entitled to intervene but failed to do so. With respect to whether the failure to intervene barred any rights of the creditor, the court said (249 U. S. 249, 39 S. Ct. 264, 63 L. ed. 588):

"* * * These sections [pertaining to the right to intervene] are permissive, not mandatory. They give to a creditor, who fears that he will be prejudiced by an adjudication of bankruptcy, the right to contest the petition. Whether he does so or not, he will be bound, like the rest of the world, by the judgment, so far as it is strictly an adjudication of bankruptcy. But he is under no obligation to intervene, and the existence of the right is not equivalent to actual intervention. Unless he exercises the right to become a party, he remains a stranger to the litigation and, as such, unaffected by the decision of even essential subsidiary issues. [Citations omitted.] The rule is general that persons who might have made themselves parties to a litigation between strangers, but did not, are not bound by the judgment."

We think the same rule is applicable here. If there was any right to intervene it was permissive only; and inasmuch as it was not exercised, failure to intervene would not bar plaintiffs from litigating the issue here. Ordinarily, a judgment does not bind parties in a subsequent controversy unless they were adversaries in the original action. Pioneer Sav. & Loan

Co. v. Bartsch, 51 Minn. 474, 53 N. W. 764, 38 A. S. R. 511; Bunge v. Yager, 236 Minn. 245, 52 N. W. (2d) 446.

It follows that the decision of the trial court must be affirmed.

Affirmed.

MR. JUSTICE PETERSON, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.