**Holly NOVACK, et al., Appellants,**

v.

**NORTHWEST AIRLINES, INC., Respondent,**

**Republic Airlines, Defendant.**

**No. C9–94–900.**

Court of Appeals of Minnesota.

Jan. 3, 1995.

Barry Goldstein, Kristine Poplawski, Colleen Martin, Saperstein, Mayeda & Goldstein, Oakland, CA, Paul C. Sprenger, Susan M. Coler, Sprenger & Lang, Minneapolis, for appellants.

Thomas Tinkham, Jean Holloway, David Y. Trevor, Dorsey & Whitney, Minneapolis, for respondent.

Helen Norton, Donna R. Lenhoff, Judith L. Lichtman, Women's Legal Defense Fund, Mary E. Hartnett, Rebecca A. Matthias, Nancy J. Rosenfeld, Washington, DC, for defendant.

Mark Greenman, Law Offices of Wayne Kenas, Minneapolis, for amicus curiae Women's Legal Defense Fund.

Considered and decided by PARKER, P.J., and KALITOWSKI and FOLEY, JJ.

## OPINION

DANIEL F. FOLEY, Judge.[*]

Flight attendants claim that Northwest Airlines' 5'2" minimum height requirement violates the Minnesota Human Rights Act and (1) challenge the trial court's statutory interpretation of Minn.Stat. § 363.03, subd. 11 (1992); (2) allege that the record lacks sufficient evidence to support Northwest Airlines' proffered business justification; and (3) argue that the court erred by failing to certify a class and by dismissing one flight attendant's claim as untimely. Northwest Airlines appeals the trial court's finding that the height requirement has an adverse impact upon women. We affirm.

## FACTS

Plaintiff Nimali Sondel initiated a discrimination suit against respondent Northwest

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn.Const. art. VI, § 2.

Airlines (NWA) in July 1992.[1] Appellants Holly Novack, Kim Shaller, and Brenda Glapa (appellants) later joined the suit, claiming that NWA refused to hire them as flight attendants because they did not meet NWA's 5'2" minimum height requirement. Appellants alleged that this policy had a disparate impact on women and thus violated Minn. Stat. § 363.03, subd. 11 (1992). Before trial, the court denied appellants' motion for class certification.

To support the disparate impact claim, appellants presented statistical evidence showing that women were 66 times more likely to be excluded by the height requirement than men. Appellants also argued that NWA's proffered business justifications of passenger safety, customer service, and reduced flight attendant injury failed to rationalize the resulting discrimination. Appellants argued that (1) other major airlines have lower height requirements; (2) NWA lowered its height requirement from 5'2" to 5'0" in April 1992; (3) federal regulations contained no height restrictions for flight attendants; (4) NWA employed flight attendants under 5'2"; (5) NWA presented no credible studies validating the need for 5'2" requirement; and (6) NWA's studies were based on improper methodology and failed to incorporate the federal Uniform Guidelines on Employee Selection Procedures.[2]

Numerous experts testified in support of NWA's 5'2" height requirement. Cynthia Hoene, inflight service, safety, and health specialist, testified that flight attendants must be able to assist passengers in stowing baggage, to access emergency equipment, and to fasten overhead compartments. Hoene opined that, because of the extensive reaching and lifting required by the position, a person less than 5'2" would be more prone to injury.

David Zanick and Michael Goertz, Airport Medical Clinic physicians, supported Hoene's assertion and both concluded that the 5'2" height requirement was job-related. In reaching this conclusion, each doctor relied on familiarity with the flight attendant position, conversations with supervisory personnel, treatment of flight attendant injuries, ergonomic studies, and research of relevant medical texts. ErgoTech, Inc. also presented the results of an ergonomic study, showing that the 5'2" standard was job-related and justified by business necessity. The ErgoTech study incorporated "existing studies of height selection criteria and an analysis of the functional reach and force generation requirements dictated by the cabin configurations of the current NWA fleet." ErgoTech's study concluded that a taller standard of 5'3" to 5'4" was preferable.

To rebut these studies, appellants presented Carl Hoffmann, a PhD sociologist and expert in statistics and research methodology. Dr. Hoffmann criticized the methodology of NWA's studies, stating that none of them involved proper procedure pursuant to the EEOC Uniform Guidelines on Employment Selection Procedures. Dr. Hoffmann opined that NWA, in setting a job-related medical standard, failed to define the essential functions of the job and then to evaluate these critical job functions in light of the selection standards.

The trial court found that the 5'2" minimum height requirement had an adverse impact on women but determined that NWA had proved that the height requirement was manifestly related to the job and significantly furthered three important business purposes: customer service, passenger safety, and reduced flight attendant injury.

The court also rejected appellants' lesser restrictive alternatives, finding that using the step rail along the passenger seat, the passenger seat itself, or a step stool was unacceptable and dangerous. The court declined to accept appellants' "reach-based test" in lieu of a height standard because a person's reach is not a "generally well-known measure, * * * contain[s] more variables, and hence more possibility for inaccurate mea-

---

1. Sondel had commenced a parallel federal action on June 8, 1992 and later amended her complaint to add plaintiffs Novack, Glapa, Shaller and Karen Johnson. *Sondel v. Northwest Airlines, Inc.*, No. 3–92–381, 1993 WL 559031 at

*2 (D.Minn. Sept. 30, 1993). The federal district court dismissed Sondel as a plaintiff in January 1993. *Id.* at *1.

2. 29 C.F.R. Part 1607 (1992).

surement." Additionally, the court found that appellants had failed to prove that a reach-based "standard would have a significantly lesser impact on women. Given the high correlation between height and reach, a reach standard would exclude most women under 5'2" and a significant number of taller women as well." Trading job duties was not a viable alternative because it ran contrary to the employment agreement and the bid-selection process. Likewise, the court found that redesigning the aircraft to accommodate shorter height was not feasible and would be "extraordinarily expensive." The court also refused to certify a class, finding that the appellants had failed to meet their burden of showing that the class was sufficiently numerous. NWA noticed review on the trial court's finding that its height requirement had an adverse impact on women.

## ISSUES

I. Is the issue of statutory interpretation of the Minnesota Human Rights Act properly before the appellate court where no motion for a new trial was made?

II. Does the evidence support the trial court's findings that NWA's minimum height requirement for flight attendants is manifestly related to the job and/or significantly furthers an important business purpose?

III. Did the trial court err by rejecting flight attendants' lesser restrictive alternatives?

IV. Did the trial court err by finding that NWA's minimum height requirement had an adverse impact on women where actual impact in hiring is not significant because 80% of flight attendants are women and the airline hires women at a higher rate than men?

V. Did the trial court err by refusing to certify a class where the defined class numbered less than 40 members?

VI. Did the trial court err by dismissing Brenda Glapa's claim as untimely?

## ANALYSIS

### I.

■ The construction of a statute is clearly a question of law and fully reviewable by an appellate court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985). The proper standard of review however is not at issue in this appeal. Rather appellants raise a statutory construction argument requiring this court to determine whether the issue is within our scope of review.

Appellants claim that the trial court misread the Minnesota Human Rights Act (MNHRA) in light of federal case law and therefore misapplied the dual standard provided by Minn.Stat. § 363.03, subd. 11 (1992). NWA argues that appellants' statutory construction argument is outside this court's scope of review because appellants did not raise the issue in the trial court and failed to move for a new trial.

■ Generally on appeal from a judgment where no motion for a new trial was made, "the only questions for review are whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and the judgment." *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976). A post-trial motion for a new trial raising individual errors allegedly occurring at trial "is a prerequisite to appellate review of those errors." *Sauter v. Wasemiller*, 389 N.W.2d 200, 201 (Minn. 1986). The *Sauter* court elaborated that "matters such as trial procedure, evidentiary rulings, and jury instructions are subject to appellate review only if there has been a motion for a new trial in which such matters were assigned as error." *Id.*

Nonetheless, the court of appeals has conducted de novo review of cases involving "questions of law" even absent a new trial motion. *County of Isanti v. Peterson*, 469 N.W.2d 467, 469 (Minn.App.1991) (interpretation of an ordinance is a question of law and hence reviewable even without a new trial motion); *accord Brooks v. Doherty, Rumble & Butler*, 481 N.W.2d 120, 124 (Minn.App. 1992), *pet. for rev. denied* (Minn. Apr. 29, 1992); *Schmidt v. St. Paul Fire & Marine Ins. Co.*, 376 N.W.2d 237, 239 (Minn.App. 1985). Recently, however, the Minnesota Supreme Court criticized the court of appeals' "question of law exception" to the *Sauter*

rule. In *Tyroll v. Private Label Chemicals, Inc.,* the supreme court held that

[w]ith a little ingenuity, most questions can be converted into so-called "questions of law"; if the exception were to be allowed, it would soon swallow up *Sauter.* Nor would orderly appellate review be served if appealability of an issue degenerated into debates over what was a question of law. We adhere to *Sauter* and the policy reasons therein stated, and contrary decisions of the court of appeals are overruled.

505 N.W.2d 54, 57 (Minn.1993).

▮ In light of *Tyroll,* we conclude that appellants' argument is outside this court's scope of review. In *Tyroll,* the issue was whether the defendant tortfeasor was entitled to a jury trial. The supreme court distinguished the jury trial issue from a "routine" question of law, holding that a the "right to a jury trial is *sui generis,*" a right constitutionally guaranteed. *Id.* Here, the MNHRA statutory interpretation question is similar to the issue raised by *Isanti County,* a case involving the interpretation of an ordinance. 469 N.W.2d at 469. The *Tyroll* court specifically noted that, simply because an issue may be framed as a question of law, an appellate court does not have authority to bypass the *Sauter* rule.[3] *Tyroll,* 505 N.W.2d at 57. Because appellants' statutory interpretation question does not involve a "*sui generis* " right and because appellants failed to move for a new trial, we conclude that, under *Gruenhagen–Sauter,* "the only questions for review are whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and the judgment." *Gruenhagen,* 310 Minn. at 458, 246 N.W.2d at 569.

## II.

▮ A district court's "finding of fact will be reversed only if, upon review of the entire evidence, a reviewing court is left with the definite and firm conviction that a mistake has been made." *Gjovik v. Strope,* 401 N.W.2d 664, 667 (Minn.1987). A district court's findings of fact "shall not be set aside unless clearly erroneous." Minn.R.Civ.P. 52.01. Clearly erroneous means "manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Northern States Power Co. v. Lyon Food Prod., Inc.,* 304 Minn. 196, 201, 229 N.W.2d 521, 524 (1975).

The MNHRA states that an employer may justify a discriminatory employment practice by showing that it is "manifestly related to the job" *or* that it "significantly furthers an important business purpose." Minn.Stat. § 363.03, subd. 11. The trial court found that NWA had demonstrated *both.* Thus, claim appellants, the trial court interpreted these two different standards to mean the same thing and applied two quite different standards to the same selection practice.

Appellants rely on two United States Supreme Court cases to support their claim that the standards differ. In *Griggs v. Duke Power Co.,* the Court held that an employer could "defend" against an unfair employment practice by showing that the practice was required by "business necessity" and that the practice has a "manifest relationship to the employment in question." 401 U.S. 424, 431–32, 91 S.Ct. 849, 853–54, 28 L.Ed.2d 158 (1971). In *Wards Cove Packing Co., Inc. v. Atonio,* the Court retreated somewhat from the *Griggs* standard and held that the "touchstone is a reasoned review of the employer's justification." 490 U.S. 642, 659, 109 S.Ct. 2115, 2126, 104 L.Ed.2d 733 (1989). Under the *Wards Cove* standard, "the dispositive issue is whether a challenged practice serves, in a significant way, the legitimate employment goals of the employer." *Id.*

---

**3.** While statutory construction issues are questions of law reviewed de novo by appellate courts, our decision in this case does not disrupt this established standard of review. We point to several examples of issues that may be reviewed de novo absent a motion for a new trial without violating *Sauter. See, e.g., Berke v. Resolution Trust Corp.,* 483 N.W.2d 712, 715 (Minn.App. 1992) (failure to raise subject matter jurisdiction to trial court does not preclude appellate review), *pet. for rev. denied* (Minn. May 21, 1992); *Minneapolis Pub. Housing Auth. v. Greene,* 463 N.W.2d 558, 560 (Minn.App.1990) (motion for new trial is unnecessary to preserve unlawful detainer issues for appeal). For a discussion of the distinction between scope of review and standard of review, see David F. Herr & Mary R. Vasaly, *Appellate Practice in Minnesota: A Decade of Experience with the Court of Appeals,* 19 Wm. Mitchell L.Rev. 613, 618–21 (1993).

Moreover, "there is no requirement that the challenged practice be 'essential' or 'indispensable' to the employer's business for it to pass muster." *Id.*

■ While the Civil Rights Act of 1991 effectively overruled the *Wards Cove* standard, the MNHRA provides that an employer may rebut a disparate impact claim under either the *Griggs* or the *Wards Cove* standard. *Compare* Civil Rights Act of 1991, Pub.L. No. 102–166, § 3, 105 Stat. 1071 (1991) (reinstating *Griggs'* concepts of business necessity and job-relatedness) *with* Minn.Stat. § 363.03, subd. 11 (employer practice must be "manifestly related to the job" *or* must "significantly further an important business purpose."). Appellants argue that the trial court could not find that NWA met *both* prongs of subdivision 11 without contravening federal law or without violating a general maxim of statutory construction. We disagree. While *Wards Cove* no longer sets forth the prevailing federal standard, the trial court's reliance on *Wards Cove*—in addition to the *Griggs* standard—is not fatal. *Cf. Bradley v. Pizzaco, Inc.,* 7 F.3d 795, 799 (8th Cir.1993) (reversing district court that relied solely on *Wards Cove* standard after enactment of the Civil Rights Act of 1991). Here, the trial court amply supported its finding that NWA met *both* the *Griggs* standard and the *Wards Cove* standard. The propriety of maintaining the dual standard within our state statute rests with the legislature:

> It is for the legislature and not the court to create exceptions, if there are to be any. Where a statute is couched in broad and comprehensive language admitting of no exceptions, the court is not justified in engrafting thereon exceptions, however much it may deem the public welfare to require them.

*State v. Tennyson,* 212 Minn. 158, 161–62, 2 N.W.2d 833, 835 (1942) (citation omitted).

■ Appellants attack the trial court's finding that NWA's height requirement is manifestly related to the job as clearly erroneous for three reasons: first, appellants allege that the height requirement cannot be manifestly related to the job because NWA lowered its height requirement to 5'0" in 1992 in order to increase the number of Asian-speaking flight attendants.[4] But the trial court found that "severe financial difficulties" and "impending bankruptcy" formed the basis of NWA's policy change.

■ Moreover, the court was not persuaded that this policy change outweighed other evidence that the height requirement was manifestly related to the job and that a 5'2" height requirement was preferable. The record reflects that the court considered testimonials of flight attendants, medical experts, and ergonomic studies. Additionally, the employer is not required to prove that the selection criteria is "absolutely" manifestly related to the job. Rather, to be justified as a business *necessity*, a practice "must directly relate to a prospective employee's ability to perform the job effectively." *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 1005, 108 S.Ct. 2777, 2795, 101 L.Ed.2d 827 (1988) (Blackmun, J. concurring in part, concurring in the judgment).

■ Second, appellants claim that the trial court's finding is error because women under 5'2" can adequately perform the job. The record reflects that the court considered the testimony of several flight attendants, who are under 5'2" and were purportedly able to perform their job. Additionally, the trial court reviewed evidence showing that other airlines have lower height requirements. Successful performance by employees who do not meet the selection criteria is not necessarily conclusive proof that the challenged requirement is not manifestly related to the job. *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1120–21 (11th Cir.1993) (absence of accidents not sufficient to defeat firefighter "no beard" rule).

■ Our standard of review requires this court to give due regard to the trial court's ability "to judge the credibility of the witnesses." Minn.R.Civ.P. 52.01. The court's finding is not clearly erroneous or manifestly contrary to the weight of the evidence.

---

4. The record is unclear what height NWA presently requires. This fact, however, is not essential to our determination because the claims at issue involve a particular time period.

Third, appellants attack the methodology of NWA's studies. While the EEOC Uniform Guidelines on Employee Selection Standards are given great deference by the courts, the Supreme Court has held that the link between selection processes and job performance may be established by a variety of methods, including the results of studies, expert testimony, and prior successful experience. *Watson*, 487 U.S. at 1007, 108 S.Ct. at 2795–96. NWA presented ergonometric studies and expert testimony to support the minimum height requirement. Again, the trial court properly judged the credibility of the witnesses and weighed the evidence presented in determining that NWA had proved that the height requirement is manifestly related to the job.

### III.

While appellants provided the court with a litany of lesser restrictive alternatives, the court gave due consideration and a reasonable basis for rejecting each one. The trial court did not err by finding that appellants had failed to meet their burden.

### IV.

 NWA alleges that the trial court erred by finding that NWA's minimum height requirement had an adverse impact on women. The trial court adopted appellants' statistics showing that women were 66 times more likely to be excluded by the height requirement than men. NWA claims that the actual disparate impact in hiring is not significant because 80% of flight attendants are women and the airline hires women at a higher rate than men.

The United States Supreme Court flatly rejected this "bottom-line" analysis. In *Connecticut v. Teal,* the Court held that a defendant in a disparate impact case may not defend the alleged discriminatory practice on the basis that the members of the protected class are adequately represented at the employer's "bottom-line." 457 U.S. 440, 441–442, 102 S.Ct. 2525, 2528, 73 L.Ed.2d 130 (1982). The trial court correctly analyzed the disparate impact issue and properly rejected the bottom-line defense.

### V.

 A trial court has broad discretion to determine whether class actions may be maintained. *Streich v. American Family Mut. Ins. Co.,* 399 N.W.2d 210, 213 (Minn. App.1987), *pet. for rev. denied* (Minn. March 25, 1987).

Minnesota Rules of Civil Procedure provide that

One or more members of a class may sue or be sued as representative parties on behalf of all only if

(a) the class is so numerous that joinder of all members is impracticable;

(b) there are questions of law or fact common to the class;

(c) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(d) the representative parties will fairly and adequately protect the interests of the class.

Minn.R.Civ.P. 23.01. Appellants allege error only in the trial court's finding that the class was not sufficiently numerous to warrant class certification. The trial court found that the potential class numbered less than 40 women.

 The trial court carefully analyzed the applicable time parameters in calculating the potential number of class members. The court found that Brenda Glapa filed her civil suit on December 30, 1992. As such, the court found that the MNHRA looks backward one year from the date the civil complaint was filed to determine which persons may properly be joined in the class action. Appellants argue that the court should have looked back to August 19, 1991, which is one year prior to the date that Brenda Glapa filed her claim with the Minnesota Human Rights Department.

The court declined to acknowledge this date and stated:

While the MHRA provides that the time of the filing of the charge controls when the commissioner proceeds via a complaint arising from the charge, a claimant cannot rely on the time of the charge when proceeding pursuant to a complaint he or she

brought directly in district court. It must be remembered that Minnesota does not link the administrative process to the litigation process as the federal anti-discrimination laws do. The two processes are completely independent. While a class of plaintiffs proceeding administratively can rely on the date the administrative charge was filed, a plaintiff who chooses to proceed via a private civil action cannot "jump the track" and rely on a defunct administrative charge.

The record supports the court's conclusion that the original complaint was filed on December 30, 1992, and the court properly set the date parameters.

Having determined the appropriate time frame, the court concluded that appellants met each of the prerequisites for class certification except numerosity. The court refused to consider an additional number of unknown nonresident applicants who may have had sufficient contacts with Minnesota and found that the class, as modified, contained less than 40 Minnesota residents. Moreover, the court noted that appellants had waited until two months before the December 1993 trial to file for class certification even though the initial complaint was filed in December 1992. The court found that "[t]his untimely filing simply exacerbates the management problems that this court would have if this case proceeded pursuant to Rule 23.02(c)" and that "class action proceeding [would not be] superior to other available methods for the fair and efficient adjudication of the controversy." The record reasonably supports the trial court's denial of class certification.

### VI.

Given our disposition, we decline to address whether Brenda Glapa's claim was untimely.

### DECISION

■ 1. Merely characterizing an issue as a question of law does not allow an appellate court to review de novo if the issue has not been properly preserved for appeal.

■ 2. A trial court does not err by finding that an employer has sufficiently re-

butted a disparate impact claim by showing that an alleged discriminatory practice is manifestly related to job and significantly furthers a legitimate business practice.

■ 3. An employer may not defend against an alleged discriminatory practice by showing that the members of the protected class are adequately represented at the employer's "bottom-line."

■ 4. A trial court does not abuse its discretion by refusing to certify a class containing less than 40 members.

**Affirmed.**