56 F.3d 934
 Nimali DeSilva SONDEL; Holly Novack; Kim Shaller; Brenda
Glapa; Stephanie Sangsoon Chung; Denise Johnson,
on behalf of themselves and all others
similarly situated, Appellants,
v.
NORTHWEST AIRLINES, INC.; Republic Airlines, Appellees.
Equal Employment Opportunity Commission, Amicus Curiae.
 No. 94-2524.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 15, 1995.
Decided June 6, 1995.
Rehearing and Suggestion for Rehearing
En Banc Denied
Aug. 1, 1995.
 
 Barry L. Goldstein, Oakland, CA, argued (Colleen Martin, Jollee Faber, Susan M. Coler and Paul C. Sprenger, on the brief), for appellants.
 Barbara L. Sloan, Washington, DC, argued, for amicus, EEOC.
 Thomas W. Tinkham, Minneapolis, MN, argued (Jean Holloway and David Y. Trevor, on the brief), for appellees.
 Before MAGILL, LOKEN, and MURPHY, Circuit Judges.
 MAGILL, Circuit Judge.
 
 
 1
 Nimali Sondel, Holly Novack, Kim Shaller, Brenda Glapa, Stephanie Sangsoon Chung and Denise Johnson (collectively referred to as "Plaintiffs") appeal the district court's[1] grant of summary judgment in favor of Northwest Airlines, holding their Title VII class action suit barred by res judicata. We affirm.
 
 I. BACKGROUND
 
 2
 On June 8, 1992, Nimali Sondel filed a class action lawsuit in federal district court against Republic[2] and Northwest Airlines alleging disparate impact discrimination under Title VII and the Minnesota Human Rights Act (MHRA), a state law claim. The gravamen of both claims is confined to Republic and Northwest Airlines' 5'2" minimum height requirement for flight attendants. Sondel filed an amended complaint omitting the MHRA state law claim from the federal suit on July 16, 1992.[3]
 
 
 3
 On July 27, 1992, eleven days after the state MHRA claim was dismissed from the federal suit, Sondel,[4] Novack, Glapa and Shaller filed a putative class action suit in Minnesota state court on this MHRA claim. This suit raised an issue identical to the federal class action: It alleges Northwest's 5'2" height restriction for flight attendants constitutes disparate impact discrimination against women.[5] In the state suit, Novack, Glapa and Shaller were represented by the same counsel that represented the class in the federal class action. Chung unsuccessfully attempted to intervene as a plaintiff in this state suit.
 
 
 4
 After being certified class representatives in the federal suit, Novack, Shaller and Glapa attempted to certify a class action in the state court. The state trial court denied this motion, holding that (1) plaintiffs had not demonstrated that the class, of less than forty Minnesota residents, was sufficiently numerous or that joinder would be impracticable; (2) certification under Minnesota Rule 23.02(b) was inappropriate because individual damage claims predominated over claims for injunctive or declaratory relief; (3) certification under Rule 23.02(c) was inappropriate because a class action was not superior to other available methods to fairly and efficiently adjudicate the controversy; and (4) plaintiffs' failure to request class certification until two months prior to trial exacerbated the management problems that the court would have pursuant to Rule 23.02(c). Accordingly, the state suit was pursued in the certified representatives' individual capacities. Novack, Glapa and Shaller twice requested the state court to stay proceedings, but were twice denied. The claims proceeded to an eight-day bench trial in December 1993. Novack, Glapa, Shaller and Johnson testified on behalf of the plaintiffs at the state court trial. On February 4, 1994, the state court issued a thirty-one page opinion in favor of Northwest, holding that (1) plaintiffs established that Northwest's 5'2" height requirement adversely impacts upon women; and (2) Northwest established that the height requirement was manifestly related to the job and significantly furthered Northwest's important business purposes, particularly (a) ensuring passenger safety; (b) providing customer service; and (c) reducing flight attendant injury. Appellants' App. at 265. The state court plaintiffs appealed, and on January 3, 1995, the Minnesota Court of Appeals affirmed in Novack v. Northwest Airlines, 525 N.W.2d 592 (Minn.App.1995).
 
 
 5
 Following the decision of the state trial court, Northwest moved for summary judgment in the federal suit, asserting Plaintiffs were barred by res judicata and collateral estoppel. Invoking offensive collateral estoppel from the state court finding that Plaintiffs had made a prima facie case, Plaintiffs also moved for summary judgment, asserting that the state court's decision that the 5'2" height requirement adversely impacted women collaterally estops Northwest from relitigating this issue in the federal suit. The district court granted Northwest's motion for summary judgment, holding that res judicata barred the federal class action suit, and dismissed the suit with prejudice. The district court based its decision on a finding that the absent federal class members (the Class) were in privity with Novack, Glapa and Shaller (the "state court plaintiffs" or "certified representatives") when they prosecuted their state court suit.
 
 
 6
 Plaintiffs appeal, alleging the district court erred in (1) determining that res judicata barred the federal class action because the state court plaintiffs were not in privity with the Class; (2) applying res judicata because its application would bar the class action on the basis of a ruling that runs counter to federal Title VII standards; (3) denying Plaintiffs' motion for summary judgment on the ground of collateral estoppel; and (4) finding that Sondel did not comply with the administrative prerequisites of Title VII.[6]
 
 II. DISCUSSION
 A. Res Judicata
 
 7
 The prior state court judgment in Novack is entitled to the same preclusive effect in federal court as it would receive in Minnesota. 28 U.S.C. Sec. 1738 (1988); Charchenko v. City of Stillwater, 47 F.3d 981, 984 (8th Cir.1995). We review the district court's interpretation of state law de novo, giving its decision no deference. Slaughter v. American Casualty Co., 37 F.3d 385, 387 (8th Cir.1994) (citing Salve Regina College v. Russell, 499 U.S. 225, 231, 111 S.Ct. 1217, 1220, 113 L.Ed.2d 190 (1991)).
 
 
 8
 We review the district court's grant of summary judgment de novo. Commercial Union Ins. Co. v. McKinnon, 10 F.3d 1352, 1354 (8th Cir.1993). We must determine whether the evidence, when viewed in the light most favorable to the nonmoving party, establishes that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Id.
 
 
 9
 Under Minnesota law, res judicata is considered "a finality doctrine which dictates that there be an end to litigation." Dorso Trailer v. American Body & Trailer, 482 N.W.2d 771, 773-74 (Minn.1992). The doctrine states that:
 
 
 10
 [a] judgment on the merits constitutes an absolute bar to a second suit for the same cause of action, and is conclusive between parties and privies, not only as to every other matter which was actually litigated, but also as to every matter which might have been litigated therein.
 
 
 11
 Id. at 774 (citations omitted). Res judicata should not be rigidly applied; rather, it focuses on whether its application results in an injustice against the party to be precluded. Houlihan v. Fimon, 454 N.W.2d 633, 635 (Minn.App.1990). Plaintiffs concede that res judicata bars Novack, Shaller and Glapa from pursuing their federal claims. Plaintiffs also concede that the state suit was on the merits and the federal suit involves the same cause of action. Accordingly, the only issue before us is whether the Class was in privity with the state court plaintiffs when they prosecuted the state lawsuit to its merits. If the entire class was in privity with the state court plaintiffs, res judicata bars them from prosecuting the federal class action. Plaintiffs argue the district court erred in finding privity because it failed to distinguish between the capacities in which the state and federal suits were prosecuted. The district court based its finding of privity on its prior ruling that the certified representatives represented the same legal right and shared a common interest in the determination of the disparate impact of Northwest's minimum height standard with the Class.
 
 
 12
 In Minnesota, "there is no generally prevailing definition of privity which can be automatically applied to all cases." McMenomy v. Ryden, 276 Minn. 55, 148 N.W.2d 804, 807 (1967) (internal quotations and citations omitted). In general, "privity involves a person so identified in interest with another that he represents the same legal right." Id. (internal quotation and citation omitted). Privity also "expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties." Margo-Kraft Distrib., Inc. v. Minneapolis Gas Co., 294 Minn. 274, 200 N.W.2d 45, 47 (1972) (internal quotation and citation omitted). Whether privity exists must be determined by the facts of each case. Johnson v. Hunter, 447 N.W.2d 871, 874 (Minn.1989). "Privity depends upon the relation of the parties to the subject matter." Porta-Mix Concrete v. First Ins., 512 N.W.2d 119, 122 (Minn.App.1994) (internal quotations and citation omitted).
 
 
 13
 There are three generally recognized categories of nonparties who will be bound by a prior adjudication: (1) a nonparty who controls the original action; (2) a nonparty whose interests are represented by a party to the original action; and (3) a successor-in-interest to a party. Margo-Kraft, 200 N.W.2d at 48. It is undisputed that the Class neither controlled the state suit nor are successors-in-interest of the state court plaintiffs (and certified representatives in the federal action). Accordingly, it remains to be determined whether the state court plaintiffs represented the Class's interests in the state suit. To answer this question, it is necessary to look at the relationship between the state court plaintiffs and the Class in the context of the two suits and the commonality of their interests. Johnson, 447 N.W.2d at 874; Kaiser v. Northern States Power Co., 353 N.W.2d 899, 903 (Minn.1984).
 
 
 14
 When the class action lawsuit was certified by the federal district court, the certified representatives and the class counsel assumed certain fiduciary responsibilities to the Class.[7] Watson v. Ray, 90 F.R.D. 143, 146 (S.D.Iowa 1981); see also 3 Herbert Newburg & Alba Conte, Newburg on Class Actions Sec. 15.03 (3d ed. 1992). Thus, the certified representatives and the class counsel had fiduciary responsibilities to the Class when prosecuting the state court action. For example, the certified representatives may not take any action which will prejudice the Class's interest, or further their personal interests at the expense of the Class. Watson, 90 F.R.D. at 146. We do not believe that these duties are confined to the four corners of the federal lawsuit. Accordingly, by virtue of their fiduciary duties to refrain from taking any action prejudicial to the Class, the certified representatives were representing the interests of the Class at the state trial.
 
 
 15
 We believe that Minnesota would find N.A.A.C.P. v. Hunt, 891 F.2d 1555 (11th Cir.1990), instructive. In Hunt, the Eleventh Circuit found privity between (1) a state legislator and NAACP member, who challenged flying the confederate flag on the capitol dome in Alabama, and (2) fourteen state legislators, who were also NAACP members, raising the same issue in a subsequent suit. Id. at 1558-59. The court found privity because the plaintiff in the first suit was so closely aligned to the NAACP's interest. Id. at 1561. Hunt involves a special relationship between the parties: They were all members in the NAACP and the state legislature. A similar relationship is present in Sondel; the state court plaintiffs are the certified representatives of the federal class action. By virtue of the special nature of class actions,[8] similar to the special relationship in Hunt, the Class is so closely aligned to the certified representatives' interests as to establish privity.
 
 
 16
 Similarly, Minnesota would find Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist., 750 F.2d 731 (9th Cir.1984), persuasive. Los Angeles Branch NAACP found that a federal class action lawsuit alleging unlawful intentional segregation of Los Angeles public schools was precluded by an earlier state class action lawsuit raising the same claims. Id. at 736. In determining that the class members of the federal class were in privity with the state class in the state class action lawsuit, the court enunciated the test as whether the federal class members were "so far represented by others [in the state class action] that [their] interests received actual and efficient protection." Id. at 741.[9] In determining that this test was met, the court noted that (1) there was no showing that the plaintiffs in the state class action were inadequately represented; (2) there was no showing that the interests of the state and federal class members were different; (3) although different remedies were available, the substantive right remained the same; and (4) the relief granted the state court plaintiffs would not have changed character if the members of the federal class had been members of the state class action. Id. at 741. We believe it significant that all four of these factors are satisfied here. First, Plaintiffs do not contend that the state court plaintiffs inadequately prosecuted their state court action. Second, Plaintiffs concede that the interests of the state court plaintiffs are identical to the interests of the Class. Third, the substantive right, to be free from disparate impact discrimination, was the same in both the federal and state lawsuits.[10] Class counsel represented that the proof presented at any federal trial would not be different from that presented at the state trial. Finally, if successful in the state court action, that suit afforded more favorable relief than available under Title VII.
 
 
 17
 Furthermore, class counsel stated that he felt an unfavorable result in Novack would not preclude federal class action, thereby circumventing the earlier adverse state court judgment. The court in Kaiser recognized that res judicata is designed to prevent this type of successive litigation that allows second bites at the apple. Kaiser, 353 N.W.2d at 903; see also County of Boyd v. US Ecology, Inc., 48 F.3d 359, 361 (8th Cir.1995).
 
 
 18
 It is well established in Minnesota that coincidental interests alone are not sufficient to establish privity. Pirrotta v. Independent Sch. Dist. No. 347, 396 N.W.2d 20, 22 (Minn.1986). Nor is the combination of coincidental interests and an opportunity to participate and contribute in the prior action sufficient to establish privity. Denzer v. Frisch, 430 N.W.2d 471, 474 (Minn.App.1988); Bogenholm by Bogenholm v. House, 388 N.W.2d 402, 405-07 (Minn.App.1986). However, none of these cases involved a special relationship similar to that among the certified representatives, the class counsel and the Class present here. In this respect, we believe it is significant that the same attorneys who represented the state court plaintiffs are the class counsel in the federal class action. At the federal summary judgment motion, the class counsel informed the district court that he was not planning to introduce any additional evidence beyond that presented at the state trial. Furthermore, the Class was financially interested in the outcome of the state court suit because its counsel prosecuted the state suit with the intent of using offensive collateral estoppel[11] in the federal suit if successful in the state suit. Thus, we believe that the interests between the certified representatives, the class counsel and the Class are more than coincidental. Accordingly, we hold that the district court properly found that the Class was in privity with the state court plaintiffs.
 
 
 19
 In any event, Minnesota precludes a nonparty that has an interest in the outcome and participated in a prior suit. In Brunsoman v. Seltz, a general partner in a limited partnership was precluded from relitigating his liability for established partnership debts. 414 N.W.2d 547, 549 (Minn.App.1987). Seltz argued that since he was not named as a party in the first suit, he must be given an opportunity to relitigate the partnership's debts before the prior judgment against the partnership could be enforceable against him. Id. The court found Seltz in privity with the partnership because the record in the first suit demonstrated that Seltz had a controlling participation and an active self-interest in that suit. Id. at 550.
 
 
 20
 Furthermore, in Margo-Kraft, the court held that Margo-Kraft, a third-party defendant, was "in such practical privity" with the plaintiffs in the previous suit so as to collaterally estop them from relitigating the alleged negligence of the defendants in the previous suit. 200 N.W.2d at 47. In finding privity, the court noted that in the first suit, the plaintiffs represented Margo-Kraft's interests in finding the defendants negligent and that Margo-Kraft demonstrated a controlling participation in the first suit. Id. at 48. Margo-Kraft and the plaintiffs in the first suit were represented by the same counsel, Margo-Kraft was listed as the client on the law firm's ledger sheet, and Margo-Kraft had more contact with the attorneys than at least one of the plaintiffs. Id.
 
 
 21
 Thus, Brunsoman and Margo-Kraft stand for the proposition that a nonparty who participated in the previous trial out of self-interest may be precluded under res judicata. At bottom, Brunsoman and Margo-Kraft support a finding of privity between the state court plaintiffs and Johnson because she participated in the state court suit and was self-interested in the outcome of the state suit. Johnson was self-interested in that she would have attempted to apply offensive collateral estoppel had the state court plaintiffs prevailed.
 
 
 22
 B. Discretionary Application of Res Judicata
 
 
 23
 Plaintiffs argue that even if all elements of res judicata are satisfied, the district court has discretion to refuse to apply res judicata and this court should determine that the district court abused its discretion in applying res judicata. We disagree. Plaintiffs base this argument on broad statements in Minnesota decisions that res judicata is a flexible doctrine whose "focus is on whether its application would work an injustice on the party against whom estoppel is urged." Houlihan, 454 N.W.2d at 635. It is one thing to say that elements of res judicata are to be flexibly applied by the district court. It is quite another to say that the flexible nature of res judicata licenses the district court to disregard the doctrine of res judicata once it determines that res judicata is applicable. We need not address this tenuous argument, however. Even assuming arguendo that the district court has discretion to determine whether or not to apply the doctrine of res judicata once all the requisite elements are satisfied, we believe the district court appropriately applied res judicata under the facts of this case.
 
 
 24
 Plaintiffs' argument that res judicata would work an injustice in this case centers on two theories: (1) that the trial court applied Minnesota law that is inconsistent with Title VII, and (2) that the Class exists independently from the certified representatives. Plaintiffs' first argument boils down to an assertion that they should not be precluded because they perceive federal law is more favorable than state law. However, the state court plaintiffs voluntarily chose to file in state court, after dismissing the same claim from the federal class action.[12] Furthermore, we note that Plaintiffs conceded that all elements of res judicata were satisfied except for privity. Accordingly, we fail to perceive the relevance of this argument. The second argument simply rehashes Plaintiffs' contention that the Class and the certified representatives were not in privity at the state court level which was raised in the preceding discussion and we need not address it any further.
 
 III. CONCLUSION
 
 25
 For the foregoing reasons, we affirm the decision of the district court.
 
 
 
 [1]
 The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota
 
 
 [2]
 In 1986, Republic Airlines merged with Northwest Airlines and Northwest assumed all of Republic's liabilities
 
 
 [3]
 In November 1992, Holly Novack, Kim Shaller and Brenda Glapa were added as plaintiffs in the federal suit. Karen Johnson was also added as a plaintiff; however, in November 1993, her claim was dismissed with prejudice by stipulation. In January 1993, the district court granted Northwest summary judgment on Sondel's Title VII claim, holding that her administrative charge was not timely filed. In August 1993, Stephanie Sangsoon Chung was added as a plaintiff in the federal suit. On September 30, 1993, pursuant to Federal Rule of Civil Procedure 23(b)(2), the district court certified the following class:
 all women who applied for employment with Northwest Airlines as flight attendants, who were under 5'2" (or were treated as if they were under 5'2"') and who were rejected between October 10, 1991, and March 12, 1992.
 Appellants' App. at 234. Novack, Shaller and Glapa were certified by the court as the class representatives. The district court found that Chung would not adequately represent the class and denied her motion to be named as a certified class representative. In April 1994, the magistrate judge allowed Denise Johnson to intervene as a plaintiff in the federal suit.
 
 
 [4]
 Sondel's claim was dismissed by the state court on jurisdictional grounds
 
 
 [5]
 The main difference between the claim asserted under the MHRA and Title VII is the type of relief to which a prevailing party is entitled. Under the MHRA, a prevailing plaintiff may recover treble back pay, emotional distress damages and punitive damages that are not available under Title VII. Thus, under the state law suit, the remedies exceeded those in the federal class suit
 
 
 [6]
 Because we affirm the district court's decision that the class action is res judicata, we do not address plaintiffs' arguments concerning offensive collateral estoppel and the timeliness of Sondel's administrative charge
 
 
 [7]
 Plaintiffs argue that the certified representatives should not be required to forfeit their state law claims in order to prosecute the federal class action. However, this argument overlooks the certified representatives' ability to assert their state law claims under the federal district court's supplemental jurisdiction, which they did at first but later voluntarily dismissed
 
 
 [8]
 When the district court granted plaintiffs' motion for class certification, the court found that the Class and certified representatives shared the same interest in this litigation because the same basic course of conduct by Northwest was the root of their claims and these claims were based on the same legal theory. Appellants' App. at 223
 
 
 [9]
 Los Angeles Branch NAACP referred to this test as the virtual representation test. Although Minnesota has never expressly adopted or rejected virtual representation, it has stated that virtual representation analysis appears to be no different from the traditional privity analysis. Pirrotta v. Independent Sch. Dist. No. 347, 396 N.W.2d 20, 22 n. 1 (Minn.1986). Minnesota will find privity if a nonparty's interests are represented by a party to a prior action. Margo-Kraft, 200 N.W.2d at 48. We believe the test set forth in Los Angeles Branch NAACP was recognized by the Minnesota appellate court in Porta-Mix Concrete, 512 N.W.2d at 122 (privity established because party to first suit in essence represented nonparty's interests). Accordingly, we believe that Minnesota would find Los Angeles Branch NAACP persuasive
 
 
 [10]
 We disagree with Plaintiffs' assertion that the Minnesota courts analysis of the MHRA claim is inconsistent with current Title VII law. Under Title VII, Northwest was required to show a "compelling need" for the 5'2" height restriction and "the lack of an effective alternative policy that would not produce a similar disparate impact." Bradley v. Pizzaco of Neb., Inc., 7 F.3d 795, 797 (8th Cir.1993). To establish a "compelling need" for the height restriction, Northwest must show "a manifest relationship to the employment in question" and "a compelling need ... to maintain that practice and that there is no alternative to the challenged practice." Id. at 798 (internal quotations and citations omitted). This standard was applied by the state trial court. The Minnesota appellate court determined that the state trial court found that Northwest met the standards required under both the old and current Title VII law. 525 N.W.2d at 598. We agree with this conclusion
 
 
 [11]
 Offensive collateral estoppel is used in both Minnesota and federal courts to prevent a party from relitigating an identical issue decided adversely to him in a prior adjudication
 
 
 [12]
 This argument is inconsistent with plaintiffs' argument that if they were successful in the state suit, collateral estoppel would preclude Northwest from relitigating these issues in the federal class action. In order to apply collateral estoppel, the issue in the two suits must be identical. Denzer, 430 N.W.2d at 472