Cecilia LYNCH, Plaintiff/Creditor,
Respondent,

v.

Frank HETMAN, Defendant/Debtor,
Respondent,

and

State Bank of Loretto, Garnishee,
Appellant,

and

Temroc Metals, Inc., Employees' Profit Sharing Plan and Trust, Temroc Metals, Inc., Additional Defendants.

No. C1–96–1639.

Court of Appeals of Minnesota.

Feb. 11, 1996.

Review Denied March 26, 1997.

Thomas Edward Wolff, Wolff Law Office, Burnsville, for Respondent Lynch.

Alan I. Silver, Doherty, Rumble & Butler, P.A., Minneapolis, for Appellant Trust.

Kevin D. Hofman, Jacobson Harwood Bennett & Erickson, Minneapolis, for Respondent Hetman.

T. Chris Stewart, Dunkley Bennett & Christensen, Minneapolis, for Respondent Bank.

Considered and decided by
SCHUMACHER, P.J., and KLAPHAKE
and FORSBERG,*JJ.

### OPINION

KLAPHAKE, Judge.

State Bank of Loretto (the bank), garnishee, appeals from a partial judgment and a series of orders arising out of the district court's initial determination that the bank had not been discharged from respondent Cecilia Lynch's garnishment. Because we conclude that the bank was discharged, we reverse and remand.

### FACTS

This action involves the ownership of certain voting shares in Temroc Metals, Inc. (Temroc). Temroc is a Minnesota corporation that has engaged in the business of aluminum extrusion since 1963. One of its incorporators and first directors was Frank W. Hetman.

The dispute at issue here concerns Hetman's creditors. Appellant State Bank of Loretto entered into a security agreement with Hetman on December 10, 1993. It held

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. Art. VI, § 10.

Hetman's 2,570 voting shares in Temroc as collateral on a $200,000 loan. Lynch became Hetman's judgment creditor on February 17, 1994. When she learned of Hetman's relationship with the bank, she served a garnishment summons on the bank on March 20, 1995.

The following day, the bank served its nonearnings disclosure statement on Lynch. The statement indicated that the bank owed Hetman $1,907.23 and that it would retain that amount pursuant to the garnishment summons. The statement also identified as a "setoff" the bank's perfected prior security interest in Hetman's 2,570 voting shares in Temroc, which the bank valued at at least the amount of the $200,000 secured loan. In response to the disclosure statement, Lynch's attorney sent the bank a letter stating that it was her position that the Hetman shares were subject to the garnishment. It was not until August 16, 1995, about five months after service of the disclosure statement, that Lynch moved for leave to file a supplemental complaint and for an order vacating the discharge of the garnishee.

By the date of the district court's first hearing on July 18, 1996, the bank had already transferred its interest in Hetman's shares to the Temroc Employees' Profit Sharing Plan and Trust (the trust) and was no longer the owner. The district court issued a series of orders based on its conclusion that the bank had not been discharged from the garnishment and that it should have retained the Hetman shares pursuant to the garnishment summons. Eventually, in a partial judgment, the court ordered that the trust transfer the shares to Lynch. Lynch then, after commencement of this appeal, proceeded with a court-ordered public sale of the shares to a third party. Lynch's allegations of the bank's bad faith in the proceedings remain pending before the district court.

At oral argument before this court, the parties stipulated that they were not requesting that this court "undo" the actions surrounding the shares, including the eventual sale to a third party.[1] We construe this stipulation as a waiver of issues relating to the disposition of the shares and reach only the legal issue of when the garnishee bank was discharged.

## ISSUE

Did service of the bank's nonearnings disclosure statement on Lynch effect a discharge of the bank as to any further obligation regarding the Temroc voting shares?

## ANALYSIS

██ Under the revised garnishment statutes, a garnishee, after disclosure, is discharged from further obligation to the creditor when any one of six conditions is met. Minn.Stat. § 571.79 (1994). There are, however, two express exceptions to discharge. *Id.* § 571.80. Absent case law construing these statutes, we are guided by the presumption that the legislature intended the entire garnishment statute to be effective. *Id.* at § 645.17(2) (1996). We also construe the garnishment statute consistently with Minnesota's policy favoring the garnishee, to protect "his rights as a neutral or unwilling litigant." *Henderson v. Northwest Airlines, Inc.*, 231 Minn. 503, 510, 43 N.W.2d 786, 791–92 (1950); *see Altman v. Levine & Tanz, Inc.*, 256 Minn. 48, 52, 97 N.W.2d 460, 463 (1959).

██ The Minnesota legislature has identified six conditions, any one of which will discharge a garnishee after disclosure:

(a) The garnishee discloses that the garnishee is not indebted to the debtor or does not possess any money or other property belonging to the debtor that is attachable as defined in section 571.73, subdivision 3. The disclosure is conclusive against the creditor and discharges the garnishee from any further obligation to the creditor other than to retain all nonexempt disposable earnings, indebtedness, money, and property of the debtor which was disclosed.

(b) The garnishee discloses that the garnishee is indebted to the debtor as indicated on the garnishment disclosure form. The disclosure is conclusive against the creditor and discharges the garnishee from

---

1. Most of the proceeds from the sale had been distributed before oral argument.

any further obligation to the creditor other than to retain all nonexempt disposable earnings, indebtedness, money, and property of the debtor that was disclosed.

(c) If the garnishee was served with a garnishment summons before entry of judgment against the debtor by the creditor in the civil action, 270 days after the garnishment summons is served the garnishee is discharged and the garnishee shall return any disposable earnings, indebtedness, money, and property to the debtor.

(d) If the garnishee was served with a garnishment summons after entry of judgment against the debtor by the creditor in the civil action, 180 days after the garnishment summons is served the garnishee is discharged and the garnishee shall return any disposable earnings, other indebtedness, money, and property to the debtor.

(e) If the garnished indebtedness, money, or other property is destroyed without any negligence of the garnishee, the garnishee is discharged of any liability to the creditor for nondelivery of the garnished indebtedness, money, and other property.

(f) The court may, upon motion of an interested person, discharge the garnishee as to any disposable earnings, other indebtedness, money, and property in excess of the amount that may be required to satisfy the creditor's claim.

Minn.Stat. § 571.79 (1996). Conditions (a) and (b) allow for immediate discharge in the specific circumstances of a garnishee making a disclosure that it either is or is not indebted to the debtor. Such a disclosure is "conclusive against the creditor" and discharges the garnishee. In contrast, conditions for discharge (c) and (d) are not triggered by the contents of the garnishee's disclosure, but rather by the more general existence of a judgment against the debtor in a civil action by the creditor. If the creditor has obtained a judgment against the debtor, condition (d) effects a discharge of the garnishee 180 days after service of the summons. The two additional discharge provisions are not at issue here.

█ Despite satisfying one of the statutory conditions, a garnishee is not discharged if a motion relating to the garnishment is served by an interested party within 20 days of the service of the garnishee's disclosure, or if upon the creditor's motion for leave to file a supplemental complaint against the garnishee, the court, upon proper showing, vacates the discharge. *Id.* § 571.80. The latter option of moving for leave to file a supplemental complaint against the garnishee references Minn.Stat. § 571.75, subd. 4, of the garnishment statutes, which requires that the motion be made "at any time before the garnishee is discharged."

█ The district court summarily determined that condition for discharge (d) governed. By its terms, there is no discharge until 180 days after the garnishment summons was served on the garnishee. The court did not apply the 20–day exception to discharge under section 571.80, concluding that it would render the 180–day provision for discharge "meaningless."

We disagree with the district court's analysis. We conclude that the bank's disclosure of the $1,907.23 indebtedness to the debtor was conclusive and immediately discharged the bank as to the Hetman shares pursuant to condition (b). Although both conditions (b) and (d) apply to the facts of this case, to give effect to all discharge provisions, we hold that the specific provision prevails over the general. *See id.* § 645.26, subd. 1 (1996).

Minn.Stat. § 571.80's exceptions to discharge also must be read to give effect to the entire statute. *Id.* § 645.17 (1996). The first exception allows the creditor 20 days from service of the garnishee's disclosure to file a motion relating to the garnishment. This exception provides the creditor with a 20–day period in which to take court action to contest a garnishee's disclosure. The second exception provides another remedy for the creditor but is available only if the creditor "move[s] the court at any time *before* the garnishee is discharged." *Id.* §§ 571.80, .75, subd. 4 (emphasis added). Consequently, in the event the immediate discharge conditions (a) or (b) are met, the creditor's only remedy is by the first exception. Here, 20 days passed and Lynch made neither a motion for oral disclosure of relevant facts nor any other

motion "relating to the garnishment." *Id.* §§ 571.75, subd. 3; 571.80. Lynch's failure to challenge the proposed discharge under § 571.80 within 20 days of the bank's service of its disclosure statement effectively discharged the bank, leaving it free of any further obligation to Lynch and able to act pursuant to its security agreement with Hetman.

According to the district court's orders, Lynch's claims of bad faith against the bank remain pending. We remand for the district court to determine the viability of those claims in light of our decision.

## DECISION

The district court erred in its conclusion that the garnishee was not discharged from its obligation to Lynch. On remand, the district court must determine the effect of this reversal on any pending claims.

**Reversed and remanded.**