# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2815

_____

| | | |
|---|---|---|
| Ceridian Corporation, a Delaware corporation, as successor and assignee of Control Data Corporation, | * * * * | |
| Plaintiff-Appellant, | * * | |
| v. | * * | |
| SCSC Corp., a Minnesota corporation formerly known as Schloff Chemical and Supply Co.; Irvin Schloff; Ruth Schloff, | * * * * * * | Appeal from the United States District Court for the District of Minnesota. |
| Defendants, | * * | |
| Allied Mutual Insurance Company, as successor in interest to AID Insurance Company, an Iowa corporation; Tower Insurance Company, a Wisconsin corporation, | * * * * * | |
| Garnishees-Appellees. | * | |

_____

Submitted: March 13, 2000
Filed: May 5, 2000

_____

Before RICHARD S. ARNOLD, BEAM, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Ceridian Corporation (Ceridian) and SCSC Corporation (SCSC) entered into a settlement agreement which enabled Ceridian to file a garnishment action against Allied Mutual Insurance Company (Allied) and Tower Insurance Company (Tower), both of whom had insured SCSC. After the insurers were discharged by operation of the Minnesota garnishment statute, Ceridian moved to compel further disclosure from the garnishees and for relief in the event the court concluded that Allied and Tower had been discharged. The district court[1] denied the motions, see Ceridian Corp. v. SCSC Corp., 38 F. Supp.2d 1113, 1114-15 (D. Minn. 1999), and Ceridian then filed additional motions, including a motion to make the insurers parties and for leave to file second garnishment summonses. The district court denied all the motions, except for one seeking an extension to file a notice of appeal, and ordered entry of judgment. Ceridian appeals, and we affirm.

I.

The facts are not in dispute. Ceridian's predecessor, Control Data Corporation, and SCSC contaminated ground water underneath Ceridian's printed circuit board facility. Ceridian cleaned up the site and sued SCSC for contribution, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9601 et seq., and the Minnesota Environmental Response and Liability Act (MERLA), Minn. Stat. § 115B.01 et seq. It obtained a judgment against SCSC under both acts for one-third of Ceridian's response and removal costs. See Control Data Corp. v. S.C.S.C., 53 F.3d 930, 932 (8th Cir. 1995). Ceridian and SCSC then agreed that the amount of costs to be allocated to SCSC was $961,129, and

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, ruling after a report and recommendation from the Honorable John M. Mason, United States Magistrate Judge

Ceridian agreed to release SCSC from liability in exchange for an assignment of SCSC's rights under its insurance policies issued by Allied and Tower.

On or about July 8, 1998, Ceridian served garnishment summonses, garnishment disclosure forms, written interrogatories, and related garnishment papers on Allied and Tower. Allied responded on August 3, 1998 by serving on Ceridian a garnishment disclosure form and interrogatory answers. Tower served a garnishment disclosure form on Ceridian on July 27, 1998 and interrogatory answers on August 14, 1998 (after receiving an extension). Each insurer stated in its disclosure that it did not have money or property owing to judgment debtor SCSC.

Minnesota garnishment procedures are set out in Minn. Stat. § 571.71 et seq., and Allied and Tower believe they were discharged by operation of law as of August 23, 1998, and August 16, 1998, respectively. This was because Ceridian had not filed any motion within twenty days after service of the insurers' disclosure forms. See Minn. Stat. Ann. §§ 571.79, 571.80 (West Supp. 2000).

When Ceridian's counsel realized that he had failed to comply with the statutory deadline, he filed motions claiming that statutory discharge requires full disclosure and that the interrogatory answers had been incomplete and evasive (Motion to Compel Disclosure from Judgment Garnishees and Contingent Motion for Relief from Discharge of Judgment Garnishees). Tower responded with a motion to discharge garnishment. All motions were referred to United States Magistrate Judge John M. Mason, who recommended that the motions be denied. He concluded that interrogatory responses are not part of the disclosure required of garnishee defendants under Minn. Stat. § 571.79(a) and that discharge therefore occurred as a matter of law after Allied and Tower served their disclosure forms and Ceridian failed to file any motion within the twenty day statutory period provided in Minn. Stat. § 571.80. The magistrate also concluded that Tower's motion should be denied because any order confirming a discharge would be procedurally inappropriate since statutory discharge occurs by

operation of law and that Ceridian's contingent motion for relief should be denied because it was not timely filed.

Ceridian filed objections to the magistrate's report and recommendation and served and filed a second set of duplicate garnishment summonses upon Allied and Tower. The district court adopted the report and recommendation and denied all motions which had been before the magistrate. Then new steps were taken by the parties. The insurers served objections to Ceridian's second garnishment summonses, and Ceridian filed a Resubmitted [Contingent] Motion for Relief from Discharge of Judgment Garnishees. Ceridian also moved for an Order Making Allied and Tower Parties and for Leave to File Supplemental Complaint Against Allied and Tower. The district court denied all of Ceridian's motions except for its Motion for Extension of Time for Filing Notice of Appeal. The court held that Allied and Tower had been discharged as a matter of law, making the second set of garnishment summonses a nullity. It also held that Ceridian was not entitled to relief under either Federal Rule of Civil Procedure 55(c) or 60(b) and ordered that judgment should be entered.

## II.

On appeal Ceridian claims that the district court abused its discretion by denying it relief under Rule 60(b) and that it erred by not permitting it to file a second garnishment summonses against Allied and Tower.

We review the district court's interpretation of Minnesota's garnishment law de novo, see Salve Regina College v. Russell, 499 U.S. 225, 231 (1991), and its denial of Ceridian's motion for relief under an abuse of discretion standard, see Schultz v. Commerce First Fin., 24 F.3d 1023, 1024 (8th Cir. 1994).

## A.

In Minnesota, garnishment actions are governed by Minn. Stat. § 571.71 et seq. The duties of a garnishee are outlined in § 571.78, which requires the garnishee to make a garnishment disclosure, to retain non-exempt property, and eventually to remit the funds retained. Under § 571.79, a garnishee "shall be discharged of any further obligation to the creditor" if it "discloses that the garnishee is not indebted to the debtor or does not possess any money or other property belonging to the debtor that is attachable . . . ." § 571.79(a) (emphasis added).

The discharge under § 571.79 is subject to the provisions of § 571.80, which provides that a garnishee is not discharged if

> (a) Within 20 days of the service of the garnishee's disclosure, an interested person serves a motion relating to the garnishment. The hearing on the motion must be scheduled to be heard within 30 days of the service of the motion.
> (b) The creditor moves the court for leave to file a supplemental complaint against the garnishee, as provided for in section 571.75, subdivision 4, and court upon proper showing, vacates the discharge of the garnishee.

§ 571.80 (emphasis added); see also Lynch v. Hetman, 559 N.W.2d 124, 127 (Minn. Ct. App. 1997) (review denied Mar. 26, 1997) ("Conditions (a) and (b) [of § 571.79] allow for immediate discharge in the specific circumstances of a garnishee making a disclosure that it either is or is not indebted to the debtor.").

Ceridian did not file a motion with the twenty day statutory period. It attempts to circumvent the statutory discharge by arguing that Allied and Tower served evasive and incomplete answers to the interrogatories and that that amounts to a failure to disclose under the Minnesota garnishment statute. Allied and Tower argue that the statute is clear and that answers to interrogatories are not part of the required disclosure.

When the sections of the garnishment statute are read together it appears that "disclosure" means "garnishment disclosure form" and does not include answers to interrogatories. Section 571.79 provides that "the garnishee, after disclosure, shall be discharged of any further obligation to the creditor when one of the following conditions are met . . . ." The section entitled "Duties of a garnishee" provides that a garnishee shall "complete the garnishment disclosure form and return it to the creditor, and serve a copy on the debtor . . . ." Id. § 571.78. No mention is made of answers to interrogatories. See id. The section entitled "General garnishment provisions" authorizes the service of interrogatories, but speaks of them separately from disclosure: "The creditor shall serve with the garnishment summons the applicable garnishment disclosure form substantially in the form set forth in section 571.75. The creditor may also serve written interrogatories with the garnishment summons." Id. § 571.72, subd. 5 (emphasis added). Section 571.72, subd. 2(3) also speaks of disclosure separately from answers to interrogatories and makes it clear that answers to interrogatories shall be served within the same period as the written disclosure but no provision is made relative to the content of the answers: "[T]he garnishee shall serve upon the creditor and upon the debtor within 20 days after service of the garnishment summons, a written disclosure, of the garnishee's indebtedness, money, or other property owing to the debtor and answers to all written interrogatories that are served with the garnishment summons." Id. § 571.72, subd. 2(3) (emphasis added).

The statutory scheme is set up to expedite the garnishment process and to provide a simple method to obtain judgment against the garnishee unless the garnishor makes a timely motion to interrupt the process. The statute provides that "[i]f a garnishee fails to serve a disclosure as required in this chapter, the court may render judgment against the garnishee . . . ." § 571.82, subd. 1. The statute does not have a parallel provision for answers to interrogatories. If a judgment creditor could avoid discharge by challenging the content of interrogatory answers, judicial action would be required to assess their adequacy before any discharge. Delay could easily be built into the process. The statute does not leave a judgment creditor such as Ceridian without

-6-

a remedy if it feels that a garnishee's interrogatory answers are inadequate, for the creditor can protect its rights by simply filing a motion under § 571.80 within twenty days to prevent the garnishee from being statutorily discharged.

After studying the statutory scheme and reviewing the record, we conclude that the district court did not err in denying Ceridian's motion to compel disclosure.

B.

Ceridian admits that it failed to file a motion within the twenty day statutory period but says that its counsel had assumed that § 571.79(d) applied instead of § 571.79(a), thereby giving it 180 days to file a motion.[2] Ceridian concedes that its

_____

[2]Section 571.79 provides:

Subject to sections 571.78 and 571.80, the garnishee, after disclosure, shall be discharged of any further obligation to the creditor when one of the following conditions are met:

(a) The garnishee discloses that the garnishee is not indebted to the debtor or does not possess any money or other property belonging to the debtor that is attachable as defined in section 571.73, subdivision 3. The disclosure is conclusive against the creditor and discharges the garnishee from any further obligation to the creditor other than to retain all nonexempt disposable earnings, indebtedness, money, and property of the debtor which was disclosed.

(b) The garnishee discloses that the garnishee is indebted to the debtor as indicated on the garnishment disclosure form. The disclosure is conclusive against the creditor and discharges the garnishee from any further obligation to the creditor other than to retain all nonexempt disposable earnings, indebtedness, money, and property of the debtor that was disclosed.

(c) If the garnishee was served with a garnishment summons before entry of judgment against the debtor by the creditor in the civil action, 270 days after the garnishment summons is served the garnishee is discharged and the garnishee shall return any disposable earnings, indebtedness, money, and property to the debtor.

(d) If the garnishee was served with a garnishment summons after entry of

counsel "mistakenly overlooked" the relevant Minnesota case, <u>Lynch</u>, 559 N.W.2d 124. Appellant's Br. at 8. <u>Lynch</u> held that a garnishee is statutorily discharged when one of the conditions of § 571.79 has been satisfied unless the garnishor files a motion within twenty days of the service of the garnishee's disclosure. <u>See</u> <u>id.</u> at 127. Ceridian contends, however, that its mistake was the result of excusable neglect and that the district court abused its discretion in not granting relief under Rule 60(b). Allied and Tower argue that Rule 60(b) cannot be a source of relief for Ceridian because the discharge occurred by operation of law under the Minnesota statutory scheme rather than by court action. They also contend that excusable neglect is not grounds for relief if counsel's neglect was due to a mistake of law. Because we conclude that Ceridian has failed to show excusable neglect we need not address whether Rule 60(b) could ever be applied in circumstances such as these.

Excusable neglect "is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership</u>, 507 U.S. 380, 394 (1993). Whether a party's neglect of a deadline may be excused is an equitable decision turning on "all relevant circumstances surrounding the party's omission." <u>Id.</u> at 395 (citations and footnotes omitted). "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect, it is clear that excusable neglect . . .

---

judgment against the debtor by a creditor in the civil action, 180 days after the garnishment summons is served the garnishee is discharged and the garnishee shall return any disposable earnings, other indebtedness, money, and property to the debtor.

(e) If the garnished indebtedness, money, or other property is destroyed without any negligence of the garnishee, the garnishee is discharged of any liability to the creditor for nondelivery of the garnished indebtedness, money, and other property.

(f) The court may, upon motion of an interested person, discharge the garnishee as to any disposable earnings, other indebtedness, money, and property in excess of the amount that may be required to satisfy the creditor's claim.

Minn. Stat. Ann. § 571.79 (West Supp. 2000).

is a somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant." Id. at 392 (internal quotations and footnote omitted). The factors to be weighed include "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Id. at 395. Ceridian argues that its negligent reading of the statute is excusable because the impact of the mistake on Allied and Tower was minimal and because its incorrect reading of the statute was an understandable mistake.

Pioneer did not alter the traditional rule that mistakes of law do not constitute excusable neglect:

> Soon after Pioneer, it was established [in the Eleventh Circuit] that attorney error based on a misunderstanding of the law was an insufficient basis for excusing a failure to comply with a deadline. And, no circuit that has considered the issue after Pioneer has held that an attorney's failure to grasp the relevant procedural law is "excusable neglect."

Advanced Estimating Sys., Inc. v. Riney, 130 F.3d 996, 998 (11th Cir. 1997) (citation omitted) (citing cases from 2d, 5th, 7th, and 9th Circuits); see also Webb v. James, 147 F.3d 617, 622 (7th Cir. 1998) (attorney's failure to conduct research not excusable neglect); Mendell v. Gollust, 909 F.2d 724, 731 (2d Cir. 1990), aff'd on other grounds, 501 U.S. 115 (1991) (counsel's ignorance of the law did not mandate relief from judgment).

Ceridian admits that its failure to file a timely motion to prevent statutory discharge from occurring was because it made a mistake of law, yet almost all of the cases it cites involve mistakes of fact. See, e.g., Pioneer, 507 U.S. at 398 (unusual notice of filing deadline); Sugarbaker v. SSM Health Care, 187 F.3d 853, 855-56 (8th Cir. 1999), cert. denied, 120 S. Ct. 980 (2000) (factual miscalculation of filing

deadline); Johnson v. Dayton Elec. Mfg. Co., 140 F.3d 781, 784-85 (8th Cir. 1998) (poor communication); MIF Realty L.P. v. Rochester Assocs., 92 F.3d 752, 756-57 (8th Cir. 1996) (mistaken belief that settlement had been reached); Fink v. Union Cent. Life Ins. Co., 65 F.3d 722, 723-24 (8th Cir. 1995) (misaddressed envelope); Cheney v. Anchor Glass Container Corp., 71 F.3d 848, 850 (11th Cir. 1996) (miscommunication); see also Walter v. Blue Cross & Blue Shield United, 181 F.3d 1198, 1202 (11th Cir. 1999) (secretary's failure to record). The only cited case that arguably excuses a mistake of law is In re Jones Truck Lines, Inc., 63 F.3d 685, 687-88 (8th Cir. 1995), which involved a motion to set aside a default judgment under Rule 55(c). The situation in this case involves a discharge by operation of a statute rather than a reinstatement of a court case. Here a statutory right accrued to Allied and Tower once Ceridian failed to file a timely motion, and In re Jones is not on point.

Ceridian also argues that the Minnesota garnishment statute is confusing and that its incorrect interpretation therefore constitutes excusable neglect. While a court "may properly find excusable neglect [where the language of a rule is ambiguous or susceptible to multiple interpretations or where an apparent conflict exists between two rules], . . . [the] failure to follow the clear dictates of a court rule will generally not constitute such excusable neglect." Canfield v. Van Atta Buick/GMC Truck, Inc., 127 F.3d 248, 250 (2d Cir. 1997), cert. denied, 522 U.S. 1117 (1998) (failure to file responsive papers to summary judgment motion not excusable neglect). The language of Minnesota's garnishment statute is plain: a garnishee "shall be discharged . . . [after it] discloses that [it] is not indebted to the debtor" unless "[w]ithin 20 days of the service of the garnishee's disclosure, an interested person serves a motion relating to the garnishment" or a "creditor moves the court for leave to file a supplemental complaint against the garnishee . . . ." Minn. Stat. Ann. §§ 571.79, 571.80. At the time Ceridian served its garnishment summonses on Allied and Tower, the Lynch case had already been decided and made it clear that Ceridian had to file a motion within twenty days of the receipt of the insurers' disclosure to protect its rights. See Lynch, 559 N.W.2d at 127. This type of bright line rule is consistent with Minnesota policy which

-10-

protects the garnishee's "'rights as a neutral or unwilling litigant.'"  Id. at 126 (quoting Henderson v. Northwest Airlines, Inc., 231 Minn. 503, 510 (Minn. 1950)).

Ceridian has not presented a persuasive justification for its misconstruction of the Minnesota garnishment statute.  Accordingly, there is no basis for deviating from the general rule that a mistake of law does not constitute excusable neglect.  We conclude that the district court did not abuse its discretion in denying Ceridian's motion for contingent relief from the discharge of the garnishees.[3]

## C.

The viability of Ceridian's second, identical garnishment summonses turns on how the property it seeks to garnish is defined.  Ceridian argues that multiple garnishment summonses are appropriate because it is seeking to garnish money, and money is a fluid property constantly moving in and out of the possession of the garnishee.  Ceridian also argues that res judicata does not bar the second summonses because there was no final judgment on the merits resulting from the original summonses.  Allied and Tower counter that the district court was correct in finding the second garnishment summonses to have no effect because the property Ceridian seeks to garnish, the right of indemnification under the assigned contract, is a static property.

---

[3]The district court's order denying Ceridian's motion stated simply: "The undersigned, out of an abundance of caution, has reviewed the R&R *de novo*.  The R&R is thorough, addresses the legal and factual issues, and proceeds to reject the position now advanced by Ceridian.  This Court is satisfied that Judge Mason correctly resolved the issues before him."  Ceridian, 38 F. Supp.2d at 1114.  While the report and recommendation did not address the issue of negligence, Ceridian apparently fully briefed its motion and orally argued it before the district court and explained counsel's misreading of the statute.  The court concluded that counsel's negligence was not excusable based on the motion and the oral argument.  We therefore reject Ceridian's argument that the district court may not have considered all relevant factors and may have decided the case on a "whim."  Appellant's Br. at 16.

-11-

Because they were statutorily discharged from Ceridian's first garnishment summonses on that property, Allied and Tower argue that res judicata precludes Ceridian's second attempt to garnish the same property.

Multiple garnishment summonses are permissible when the property sought to be garnished is a fluid property, such as a bank account or wages. This is so because a garnishment "impound[s] only assets in the hands of the garnishee at the time the garnishee summons is served." Johnson v. Dutch Mill Dairy, 54 N.W.2d 1, 3-4 (Minn. 1952).[4] A second garnishment is also permissible when a judgment creditor has made a "good faith attempt to comply with the statute" but the first garnishment summons was defective for some reason. Widgren v. Massie, 352 N.W.2d 420, 427 (Minn. Ct. App. 1984) (first summons defective because notice not served).

In this case, the property that Ceridian attempted to garnish the second time is the same property involved in the initial garnishment from which Allied and Tower had been statutorily discharged. The property which Ceridian seeks is the right of indemnification under the assigned insurance contracts. See Chalmers v. Miller, 1997 WL 104844, at *2 (Minn. Ct. App. Mar. 11, 1997) (review denied May 13, 1997) (unpublished) (serving a second garnishment summons on the same insurance policy is a garnishment action "against the same garnishee, the same res, and on the same grounds"). No matter how many garnishment summonses Ceridian were to serve upon Allied and Tower, their responses would be the same since they deny that there is

_____

[4]The practitioner affidavits submitted by Ceridian also recognize this circumstance where multiple garnishment summonses are permissible: "It is common for a judgment creditor to serve many successive garnishment summons on an employer attempting to capture wages which are due at different times. It is also common for a judgment creditor to serve many successive garnishment summons on a bank or other financial institution attempting to capture property belonging to the debtor at the moment of service of each garnishment summons." Affidavit of James L. Baillie, Appellant's Add. at 31-32.

coverage under their insurance contracts. This is unlike the situation where a fluid property is involved, such as a bank account or wages. In that situation, a garnishee's disclosure might vary over time, depending upon whether property of the debtor is currently in the garnishee's possession. It is for this very reason that multiple garnishment summonses are permissible for fluid property, since it would not make sense to have a judgment creditor's ability to collect a debt hinge upon whether the creditor fortuitously served the garnishment summons at a moment in time when the garnishee had in its possession property of the debtor.

The purpose of the statutory disclosure is for a garnishee to identify to the judgment creditor any property of the debtor that it has in its possession and for it to retain such property until the garnishment summons is discharged. Allied and Tower completed their garnishment disclosure forms and disclosed that they held no property of the debtor, meaning that they had no duty to indemnify under their contracts with the debtor. If Ceridian believed that the garnishment disclosure forms served by Allied and Tower were incorrect and that they actually did have a duty to indemnify, it should have filed a motion within twenty days to prevent them from being discharged as a matter of law. Ceridian did not timely file such a motion, and Allied and Tower were discharged. Ceridian cannot then serve second, identical garnishment summonses "against the same garnishee, the same res, and on the same grounds . . . ." Chalmers, 1997 WL 104844, at *2. As the district court noted, "Tower and Allied have been discharged and the matter is at an end." Order of June 16, 1999 at 2. The statutory mechanism would not function as intended if a judgment creditor could prevent discharge by simply serving another garnishment summons on the same property after a creditor fails to make a timely motion.

Both parties talk about the "res judicata effect" of the discharge of the first garnishment summonses. In Chalmers, the Minnesota Court of Appeals addressed a similar issue in an unpublished decision with a slightly different procedural posture. It held there that res judicata and claim preclusion operate "to preclude a second suit

predicated on a cause of action that has already been determined by a judgment." Chalmers, 1997 WL 104844, at *2. In Chalmers the court had dismissed the judgment creditor's first garnishment action with prejudice as time barred "[a]fter hearing the parties' arguments on the merits . . . ." Id.

Ceridian argues that Chalmers is distinguishable from this case because here there had been no merits hearing or judgment entered at the time it sought to proceed with a supplemental complaint, and res judicata generally requires a judgment on the merits. We do not find this argument persuasive. It is true that res judicata generally requires a judgment on the merits. See, e.g., Sondel v. Northwest Airlines, Inc., 56 F.3d 934, 937-38 (8th Cir. 1995) (citing Dorso Trailer Sales, Inc. v. American Body & Trailer, Inc., 482 N.W.2d 771, 773-74 (Minn. 1992)). In this case, however, there was no judgment on the merits because the statute had operated automatically to discharge Allied and Tower after Ceridian failed to move within the twenty day statutory period. The district court recognized the automatic operation of the discharge provision in refusing to grant Tower's Motion to Discharge Garnishment: "We do not find authority for the Court to enter such an Order under these procedural circumstances. The statute is intended to be self-executing, and the discharge, if appropriate, occurs without the necessity of court action of any kind." Ceridian, 38 F. Supp.2d at 1120 (adopting the report and recommendation). By the very nature of the statutory discharge procedure, there has been no adjudication on the merits of whether Allied and Tower possess any assets of the debtor.

Because we hold that the Minnesota garnishment statute prohibits multiple garnishments of the same static property, we need not discuss fine points of claim preclusion in order to conclude that Ceridian is barred from serving additional garnishment summonses on Allied and Tower relating to their insurance contracts with the debtor.

IV.

-14-

In sum, we conclude that the district court neither erred nor abused its discretion. Because the insurers made timely disclosures under the Minnesota garnishment statute and Ceridian did not file any motion within the next twenty days, the insurer garnishees were discharged by operation of law. We also conclude that the statutory discharge scheme precludes Ceridian from serving identical successive garnishment summonses on its assignor's interest in the particular insurance policies. We affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.