Angela Marie NORDSTROM,
Plaintiff/Creditor,
Appellant,

v.

Connie J. EATON d/b/a Lakeside Music
Cafe, Defendant/Debtor,

Fireman's Fund Insurance Co.
of Wisconsin, Respondent,

Dolliff, Inc., et al., Respondents.

Nos. C7–01–2200, C3–02–339.

Court of Appeals of Minnesota.

Oct. 10, 2002.

John C. Dunlap, Dunlap, Ritts & Rivers, Stillwater, MN; and Wilbur W. Fluegel, Fluegel Law Office, Minneapolis, MN, for appellant.

Robert E. Salmon, William M. Hart, Susan B. DeVos, Melissa Dosick Riethof, Meagher & Geer P.L.L.P., Minneapolis, MN, for respondent Fireman's Fund Insurance Co. of Wisconsin.

James O. Redman, Redman Law Offices, Red Wing, MN, for respondents Dolliff, Inc., et al.

Charles A. Bird, Bird & Jacobsen, Rochester, MN, for amicus curiae Minnesota Trial Lawyers Association.

Considered and decided by HARTEN, Presiding Judge, WILLIS, Judge, and SHUMAKER, Judge.

## OPINION

WILLIS, Judge.

In these consolidated appeals, appellant creditor challenges the district court's decisions (1) denying her motion for leave to file a supplemental complaint against respondent insurer after the insurer's disclosure in response to a second garnishment summons and (2) granting respondent insurer's motion for summary judgment in a declaratory-judgment action. Because appellant's failure to timely move the district court for leave to file a supplemental complaint against insurer after disclosure by the insurer in response to a first garnish-

ment summons discharged insurer only from any further retention obligation that it might have had to appellant but was not determinative of appellant's rights, we reverse and remand.

## FACTS

In October 1998, Angela Marie Nordstrom was injured in a motor-vehicle accident. She sued Connie J. Eaton, doing business as the Lakeside Music Cafe (Lakeside), under Minnesota's dram-shop act, alleging that despite his obvious intoxication, Lakeside had continued to serve alcoholic beverages to the person who subsequently drove the vehicle in which Nordstrom was a passenger. Eaton tendered her defense to Fireman's Fund Insurance Company of Wisconsin (Fireman's). Fireman's denied coverage, contending that although it had provided liquor-liability insurance to Pokegama Lakeside Cafe, Lakeside's predecessor, it had cancelled Lakeside's liquor-liability policy because Lakeside failed to pay the premiums.

In July 2000, Nordstrom and Eaton entered into a Miller–Shugart settlement agreement by which Eaton stipulated to a $900,000 judgment, and Nordstrom agreed to seek satisfaction of the judgment solely from Fireman's, Eaton's insurance agent, or Eaton's insurance agency. The court approved the settlement and entered judgment.

On January 3, 2001, Nordstrom served a garnishment summons on Fireman's to collect on the putative insurance policy and on January 19, 2001, Fireman's served a disclosure on Nordstrom denying that it was indebted to Eaton or possessed any money or property belonging to Eaton. Nordstrom did not move for leave to file a supplemental complaint against Fireman's within 20 days after the date of service of the disclosure, as provided by Minn.Stat. § 571.79(h) (2000). Instead, in April 2001,

Nordstrom commenced a declaratory-judgment action against Fireman's, seeking a determination that Fireman's had issued a dram-shop policy to Eaton that was in effect on the date of the accident. Later in April 2001, Nordstrom served a second garnishment summons on Fireman's, again seeking to collect on the putative insurance policy. Responding to the second garnishment summons, Fireman's again served a disclosure denying that it held any assets belonging to Eaton and objecting on the ground that Nordstrom's failure to timely move for leave to file a supplemental complaint after the first garnishment disclosure discharged Fireman's from any obligation that it might have had to Nordstrom. Nordstrom moved the district court for leave to file a supplemental complaint against Fireman's. In September 2001, the district court denied that motion, ruling that because Fireman's had been discharged, Nordstrom was unable to show probable cause that Fireman's was liable for the judgment debt.

Meanwhile, Fireman's moved for summary judgment in the declaratory-judgment action on the ground that it was discharged from any further obligation to Nordstrom by operation of the garnishment statute. In October 2001, the district court granted Fireman's motion. Nordstrom appealed from both the district court's denial of her motion for leave to file a supplemental complaint and from the adverse summary judgment in the declaratory-judgment action. This court consolidated the appeals.

## ISSUE

When a creditor serves a summons to garnish an insurance policy and the insurer discloses under Minn.Stat. § 571.79(a) (2000) that it is not indebted to the debtor and does not possess any property of the debtor, does the creditor's failure to timely

move for leave to file a supplemental complaint against the insurer discharge the insurer completely from any obligation that it might have had to the creditor as to the putative insurance policy?

## ANALYSIS

■ Statutory construction is a question of law reviewed de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998).

■ "The purpose of garnishment is to reach property in the hands of the garnishee in order to apply it in satisfaction of the judgment." *Buysse v. Baumann–Furrie Co.*, 448 N.W.2d 865, 870 (Minn.1989). The purpose of the garnishment statutes is "to protect creditors without injustice to debtors or garnishees." *Knudson v. Anderson*, 199 Minn. 479, 484, 272 N.W. 376, 379 (1937) (citations omitted). Statutes must be interpreted and construed "to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2000).

A creditor may serve a summons on a garnishee to obtain any money or property of the debtor that is within the garnishee's possession or control. Minn.Stat. § 571.72, subd. 2 (2000). The garnishee must then serve written disclosure of any money or property owing to the debtor within 20 days after service of the summons. Minn.Stat. § 571.75, subd. 1 (2000).

The statute describes the circumstances under which disclosure may result in discharge of the garnishee's obligations. Minn.Stat. § 571.79 (2000). The section begins:

Except as provided in paragraph (h), the garnishee, after disclosure, shall be discharged of any further retention obligation to the creditor with respect to a specific garnishment summons when one of the following conditions are met:

(a) The garnishee discloses that the garnishee is not indebted to the debtor or does not possess any money or other property belonging to the debtor that is attachable as defined in section 571.73, subdivision 3. The disclosure is conclusive against the creditor and discharges the garnishee from any further obligation to the creditor other than to retain all nonexempt disposable earnings, indebtedness, money, and property of the debtor which was disclosed.

*Id.* Paragraph (h), in turn, provides that:

The garnishee is not discharged if within 20 days of the service of the garnishee's disclosure or the return to the debtor of any disposable earnings, indebtedness money, or other property of the debtor, whichever is later, an interested person (1) serves a motion scheduled to be heard within 30 days of the service of the motion relating to the garnishment, or (2) serves a motion scheduled to be heard within 30 days of the service of the motion for leave to file a supplemental complaint against the garnishee, as provided under section 571.75, subdivision 4, and the court upon proper showing vacates the discharge of the garnishee.

*Id.*

The discharge of the garnishee under paragraph (a) "is not determinative of the rights of the creditor, debtor, or garnishee with respect to any other garnishment summons, even another garnishment summons involving the same parties, unless and to the extent adjudicated pursuant to the procedures described in paragraph (h)." Minn.Stat. § 571.79(g).

Here, after Nordstrom served her first garnishment summons on Fireman's to obtain insurance proceeds and Fireman's served a disclosure denying that it was indebted to Eaton or possessed any property belonging to Eaton, Nordstrom did

not seek leave to file a supplemental complaint. After serving a second garnishment summons and receiving a second disclosure in which Fireman's again denied that it was indebted to Eaton or possessed any property belonging to Eaton, Nordstrom then timely sought leave to file a supplemental complaint in response to the second disclosure. The district court denied leave, ruling that Fireman's had been discharged by operation of Minn.Stat. § 571.79(a) when Nordstrom failed to seek leave to file a supplemental complaint in the first garnishment action.

■ Nordstrom argues that all of section 571.79 is subject to the introductory language of the section, which provides that after disclosure, the garnishee is discharged only of further *retention* obligation with respect to a specific garnishment summons, subject to the supplemental-complaint procedure in paragraph (h). Further, Nordstrom notes that paragraph (g) provides that a discharge under paragraph (a) is not determinative unless the discharge is adjudicated pursuant to procedures described in paragraph (h). Fireman's argues that the language of paragraph (a) is conclusive and that it is therefore discharged from any further obligation to Nordstrom.

The reference to discharge of a retention obligation with respect to a specific garnishment summons in the introduction to section 571.79 and a new paragraph (g) were added by amendments made to section 571.79 in 2000.[1] 2000 Minn. Laws ch. 405, § 20. This court analyzed the version

of the statute that existed before the 2000 amendments in *Lynch v. Hetman*, 559 N.W.2d 124, 127 (Minn.App.1996), *review denied* (Minn. Mar. 26, 1997). There, we addressed the effect of the failure of a creditor to move for leave to file a supplemental complaint within 20 days after the garnishee served a disclosure under section 571.79(b).[2] *Id.* In *Lynch*, the garnishee bank disclosed that it owed the debtor $1,907.23 and would retain that amount pursuant to the garnishment summons; it also disclosed that it held shares of the debtor's stock as collateral for a loan. *Id.* at 126. While the creditor informed the bank by letter that the creditor believed the shares were subject to garnishment, it was *not* until five months later that the creditor sought leave to file a supplemental complaint and an order vacating the garnishee's discharge as to the stock. *Id.* The court held that because the creditor failed to move for relief within 20 days, the disclosure discharged the bank's obligation to the creditor with regard to the stock, leaving the bank free from any further obligation to the creditor. *Id.* at 128.

Fireman's argues that under *Lynch* and a federal case interpreting Minnesota law, *Ceridian Corp. v. SCSC Corp.*, 38 F.Supp.2d 1113, 1119 (D.Minn.1999), *aff'd*, 212 F.3d 398 (8th Cir.2000), a garnishee that holds static property such as an insurance policy is automatically discharged by the terms of Minn.Stat. § 571.79(a) of any further obligation to the creditor unless the creditor moves within 20 days after service of disclosure for leave to file a

---

1. In the same act the legislature modified former section 571.80 and recodified it as section 571.79, paragraph (h). 2000 Minn. Laws ch. 405, §§ 20, 25.

2. *Lynch* addressed section 571.79(b), which applied, and still applies, when the garnishee discloses that it is indebted to the debtor, while this case involves paragraph 571.79(a),

which applies when the garnishee discloses that it is not indebted to the debtor. Paragraphs (a) and (b) used, and still use, nearly identical language in providing that such disclosure is conclusive against the creditor and discharges any further obligation to the creditor, except to retain any non-exempt money and property that was disclosed.

supplemental complaint. Fireman's contends that because the language of section 571.79(a) was not changed by the 2000 amendments, interpretation of section 571.79(a) should not change. Nordstrom argues that *Lynch* and *Ceridian* should not guide our decision here because they addressed the version of section 571.79 that existed before the 2000 amendments. *See* 2000 Minn. Laws ch. 405, § 20. We agree.

When *Lynch* and *Ceridian* were decided, the introduction to section 571.79 provided that after disclosure, the garnishee is discharged "of any further obligation to the creditor" if it met any one of several conditions set out thereafter, including the conditions in paragraph (a), except as provided in what is now paragraph (h). Minn. Stat. § 571.79 (1996). The introduction now provides that the garnishee is discharged "of any further *retention* obligation to the creditor *with respect to a specific garnishment summons*." Minn. Stat. § 571.79 (2000) (emphasis added). Further, a new paragraph (g) was added in 2000, providing that the discharge is not determinative as to the rights of the garnishee with respect to other garnishment summonses "unless and to the extent adjudicated" under the procedures described in paragraph (h), which allow the creditor to seek leave to file a supplemental complaint. Minn.Stat. § 571.79(g), (h).

■ Fireman's argues that paragraph (a) is conclusive, and it is discharged "from any further obligation" to Nordstrom. But paragraph (a) is subject to the introductory language of section 571.79, which, again, now provides that a garnishee is discharged of any further *retention* obligation if certain conditions are met, including when, as here, the garnishee serves the creditor with a disclosure that it holds no money or property of the debtor. While section 571.79 is not a model of

clarity, we conclude that the introduction to the section compels the conclusion that a garnishee who makes a disclosure under paragraph (a) is discharged only of any further retention obligation to the creditor with regard to a specific garnishment summons unless the creditor moves for relief under paragraph (h). This interpretation is supported by new paragraph (g), which explicitly states that discharge under paragraph (a) is not determinative of the parties' rights as to any other garnishment summons, "even another garnishment summons involving the same parties," unless adjudicated pursuant to paragraph (h). *See* Minn.Stat. § 571.79(g).

We recognize that this decision renders the 20–day period in paragraph (h) meaningless in the context of a static asset such as an insurance policy, but a plain reading of the statute forces this result. Otherwise, the new introductory language that provides for discharge only of "any further retention obligation to the creditor with respect to a specific garnishment summons" would be of no effect. We also recognize that our interpretation of the statute removes the finality of a discharge that may have existed under the previous version of the statute when a creditor did not move for leave to file a supplemental complaint after disclosure, but we conclude that this was the legislature's intent in enacting the 2000 amendments.

■ We are aware that a practice has developed for parties situated similarly to Nordstrom to use the garnishment statute to attempt to reach insurance proceeds. But it is clear that the garnishment statute is designed as a creditors'-remedy procedure to allow a creditor to reach a debtor's property in the hands of a disinterested third party. In circumstances such as those here, we conclude that the best practice would be to establish coverage through a declaratory-judgment action be-

fore serving a garnishment summons on the insurance company.

In summary, however, we hold that the district court erred in ruling that Fireman's obligation to Nordstrom relating to the putative insurance policy at issue was fully discharged by Nordstrom's failure to seek leave to file a supplemental complaint after the first garnishment summons. Instead, only Fireman's "retention obligation" was discharged, although it is unclear what that term means with respect to a putative insurance policy when the insurance company denies that any such policy is in effect.

■ We next address Nordstrom's appeal from the district court's grant of summary judgment to Fireman's in the declaratory-judgment action on the ground that Nordstrom's failure to move for leave to file a supplemental complaint discharged Fireman's from any obligation it might have had to Nordstrom based on the Miller–Shugart settlement agreement. A motion for summary judgment will be granted when there are no genuine issues of material fact and a party is entitled to judgment as a matter of law. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

■ Declaratory judgment is available to resolve the issue of whether insurance coverage is available to indemnify an insured. *See State v. Joseph,* 636 N.W.2d 322, 329 (Minn.2001) (holding that earlier declaratory judgment barred relitigation of coverage issue in later garnishment proceeding). Because we have held that Fireman's obligation under the putative insurance policy was not discharged by operation of section 571.79(a), the summary judgment, which was based on the determination that Fireman's obligation had been fully discharged, must be reversed.

## DECISION

The district court's denial of Nordstrom's motion for leave to file a supplemental complaint in the second garnishment action and its grant of summary judgment in the declaratory-judgment action are reversed, and we remand for further proceedings consistent with this opinion.

**Reversed and remanded.**